[No. 63413-1. En Banc.]

Argued January 16, 1996. Decided August 8, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES M. THORNE, *Appellant*.

740

744

*Richard R. Tassano* and *David L. Donnan* of *Washington Appellate Project*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

Guy, J. —

## Background

Defendant James M. Thorne challenges the constitution-

ality of the Persistent Offender Accountability Act, commonly known as the "three strikes and you're out" law. We find the law to be constitutional.

In November 1993, the voters of the state of Washington were asked in Initiative 593 to decide the question:

> Shall criminals who are convicted of "most serious offenses" on three occasions be sentenced to life in prison without parole?

Seventy-six percent of the voters of this state answered "yes" to this question.

Initiative 593, titled the "Persistent Offender Accountability Act," amended sections of the Sentencing Reform Act of 1981 (SRA). RCW 9.94A. The new law added the following language to RCW 9.94A.120(4):

> A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole or, when authorized by RCW 10.95.030 for the crime of aggravated murder in the first degree, sentenced to death, notwithstanding the maximum sentence under any other law.

Initiative 593 defined the terms "persistent offender" and "most serious offense." A "persistent offender" is an offender who:

> (a) Has been convicted in this state of any felony considered a most serious offense; and

> (b) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.360; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.

RCW 9.94A.030(27). "Most serious offense" means any of the following felonies or a felony attempt to commit any

of the following felonies, as now existing or hereafter amended:

(a) Any felony defined under any law as a class A felony or criminal solicitation of or criminal conspiracy to commit a class A felony;

(b) Assault in the second degree;

(c) Assault of a child in the second degree;

(d) Child molestation in the second degree;

(e) Controlled substance homicide;

(f) Extortion in the first degree;

(g) Incest when committed against a child under age fourteen;

(h) Indecent liberties;

(i) Kidnapping in the second degree;

(j) Leading organized crime;

(k) Manslaughter in the first degree;

(l) Manslaughter in the second degree;

(m) Promoting prostitution in the first degree;

(n) Rape in the third degree;

(o) Robbery in the second degree;

(p) Sexual exploitation;

(q) Vehicular assault;

(r) Vehicular homicide, when proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner;

(s) Any other class B felony offense with a finding of sexual motivation, as "sexual motivation" is defined under this section;

(t) Any other felony with a deadly weapon verdict under RCW 9.94A.125;

(u) Any felony offense in effect at any time prior to December 2, 1993, that is comparable to a most serious offense under this subsection, or any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a most serious offense under this subsection.

RCW 9.94A.030(23). The law does not include juvenile offenses in the definition of "most serious offense." RCW 9.94A.030(23), (25), (27). The voters pamphlet explained that "most serious crimes" essentially consist of all class A felonies and all class B felonies involving harm or threats of harm to persons. 1993 Official Voters Pamphlet at 5 (2d ed.).

Under the new law, the Governor may pardon or grant clemency to an offender, but the legislature recommends that an offender with a life sentence not be released until the offender has reached the age of 60 years old and is judged no longer a threat to society. The law mandates that the Governor provide twice yearly reports on any offender who has been released through executive action. RCW 9.94A.394.

"Three strikes and you're out" is the popular term used to describe recidivist legislation that calls for the incarceration of a criminal for life upon a third felony conviction. Many other states have enacted "three strikes" types of legislation. *See* Robert Heglin, Note, *A Flurry of Recidivist Legislation Means: "Three Strikes and You're Out,"* 20 J. OF LEGIS. 213 (1994); Mark W. Owens, *California's Three Strikes Law: Desperate Times Require Desperate Measures—But Will It Work?*, 26 PAC. L.J. 881 (1995); James Austin, Ph.D., *"Three Strikes and You're Out": The Likely Consequences on the Courts, Prisons, and Crime in California and Washington State*, 14 ST. LOUIS U. PUB. L. REV. 239 (1994). The federal violent crime control and law enforcement act of 1994 also has a "three strikes" section. 18 U.S.C. § 3559(c) (1994). The reason underlying the enactment of so many recidivist laws appears to be the heightened fear of increased violent crime and the public

outrage caused by such crime. *See* Owens, *supra*, at 883-84; Peter J. Benekos & Alida V. Merlo, *Three Strikes and You're Out!: The Political Sentencing Game*, 59 FED. PROBATION 3 (Mar. 1995); Daniel W. Stiller, Note, *Initiative 593: Washington's Voters Go Down Swinging*, 30 GONZ. L. REV. 433, 438 (1994-95).

## Facts

On April 14, 1994, the Snohomish County Prosecutor charged James M. Thorne with first degree robbery, RCW 9A.56.200(1)(b), and kidnapping in the first degree, RCW 9A.40.020(1)(b). In the Affidavit of Probable Cause (filed March 15, 1994), the prosecutor stated that the Defendant had prior convictions for second degree robbery in 1980 and first degree robbery in 1988, and that, if convicted of the current charges, he would face a mandatory sentence of life without possibility of parole. The Defendant waived his right to a jury trial and the case was tried to the court.

Following the trial, the court entered findings of fact and conclusions of law. The court found that the Defendant entered the gift shop at Stevens Memorial Hospital in Snohomish County and pointed what appeared to be a firearm at the gift shop volunteer. He demanded money from the cash register and he threatened to shoot the volunteer if she sounded an alarm. After he took the money, the Defendant told the volunteer that she was leaving with him. With his hand on her neck, the Defendant walked her out of the hospital. Several times the Defendant made threats to shoot the volunteer. After leaving the hospital he asked if she had a car. When she replied she did not, the Defendant walked her down a public sidewalk near the hospital. Two Edmonds police officers, responding to a report of the robbery and abduction, saw the two and the officers apprehended the Defendant. During the search incident to the arrest, the police found $209 and a bb gun which looked like a real pistol in the Defendant's pockets.

The court found the Defendant guilty of robbery in the

first degree and kidnapping in the first degree as charged. At sentencing, the State sought to introduce evidence that the Defendant was a "persistent offender" under the Persistent Offender Accountability Act.

The defense moved to: (1) require the prosecuting attorney to consider mitigating information about the Defendant and exercise discretion in determining whether to seek to have the Defendant sentenced as a persistent offender; (2) require the prosecutor to provide timely notice of any decision to have the Defendant sentenced as a persistent offender; (3) hold a trial to determine whether the Defendant was a persistent offender; (4) set the trial on the issue of persistent offender status before a jury unless the Defendant requested a bench trial; (5) require the prosecutor to disclose all evidence he intended to present at the trial to determine if the Defendant was a persistent offender; and (6) set the standard by which proof must be made that the Defendant is a persistent offender at proof beyond a reasonable doubt. The defense argued that the Persistent Offender Accountability Act was so similar to the habitual criminals statute, RCW 9.92.090, that the procedures mandated by the case law which applied to the prior statute applied also to the newer law.

The Snohomish County Prosecutor replied that: (1) the prosecutor cannot exercise discretion in the application of the persistent offender law in that the prosecutor does not "decide" to seek a persistent offender sentence, as it is an automatic consequence of having the requisite prior convictions; (2) there is no formal notice or charging requirement; (3) the SRA contemplates that sentencing for a persistent offender is a sentencing procedure and no independent trial is authorized; (4) there is no right to a jury in a sentencing procedure; (5) timely provision of documents would be made concerning the Defendant's prior convictions; and (6) the standard of proof required to establish the qualification of the Defendant as a persistent offender is set out in RCW 9.94A.110 as a preponderance of the evidence that the Defendant has the required criminal history.

The court denied the Defendant's motion for a jury trial on the sentencing issue and held that the proof required was a preponderance of the evidence standard set by RCW 9.94A.110. The court held that the Persistent Offender Accountability Act sought certainty in sentencing and that the prosecutor did not have discretion to decide whether a person who is convicted of his third most serious offense will, or will not, be sentenced under the new law.

After a sentencing proceeding, the court found the State had proven, beyond a reasonable doubt, that the Defendant had a prior 1980 conviction in King County for second degree robbery and a prior 1988 conviction for first degree robbery in Pierce County.[1] The court also found, beyond a reasonable doubt, that the prior convictions were of the same James Thorne who had been convicted of the present offenses. The court therefore sentenced the Defendant to life in prison without the possibility of parole pursuant to the persistent offender accountability section of the SRA. RCW 9.94A.120(4). Although the court did recognize that the Defendant had suffered from chronic schizophrenia, substance abuse and an antisocial personality disorder, the court found he also had a history of chronic criminal activity and held that the intent of the Persistent Offender Accountability Act was to impose life imprisonment without the possibility of parole on offenders like the Defendant.

The Defendant did not challenge his convictions. The Defendant appealed his sentence and we accepted direct review. The Defendant challenges the Persistent Offender Accountability Act under a number of statutory and constitutional theories.

## Issues

(1) Was Initiative 593 enacted in violation of article II, section 37 of the Washington State Constitution?

---

[1]Even though the trial court had ruled that preponderance of the evidence was the required standard of proof, the State elected to prove the higher standard of beyond a reasonable doubt in the event an appellate court imposed a higher standard of proof.

(2) Was the Initiative enacted in violation of article II, section 19 of the Washington State Constitution?

(3) Does the Persistent Offender Accountability Act violate the Bill of Attainder Clause of the federal constitution, Article I, Section 10, or article I, section 23 of the state constitution?

(4) Was the life sentence imposed without statutory authority?

(5) Does the Persistent Offender Accountability Act violate the separation of powers doctrine?

(6) Is the Act unconstitutionally vague or does it violate equal protection guarantees?

(7) Is the life sentence cruel under article I, section 14 of the Washington State Constitution, or cruel and unusual under the Eighth Amendment to the United States Constitution?

(8) Did the procedures employed by Snohomish County violate due process by not affording formal notice of the "charge," a jury trial at the sentencing proceeding, and proof beyond a reasonable doubt of the fact of the Defendant's prior convictions?

## Article II, Section 37

The Defendant argues that Initiative 593 is void because it unconstitutionally amended other existing statutes without setting forth those laws in full, as required by article II, section 37 of the Washington State Constitution.

Article II, section 37 provides:

> No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.

■■ Our first inquiry is whether the requirements of article II, section 37 apply to initiatives as well as to statutes. In *Yelle v. Kramer*, 83 Wn.2d 464, 472, 520 P.2d 927 (1974), this court stated that all laws enacted by ei-

ther the people or the legislature must be governed by the provisions of the constitution in force at that time, and that the people in their legislative capacity are not superior to the constitution. The court specifically rejected the contention that appropriate constitutional provisions do not apply to initiatives. More recently, in *Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 901 P.2d 1028 (1995), we considered whether article II, section 19 applies to initiatives. The court reasoned that amendment VII, which established the initiative right, was an amendment to article II, which concerns legislative authority and, therefore, the provisions of article II are applicable to both the legislative and initiative process. *Washington Fed'n of State Employees*, 127 Wn.2d at 551-52. This same reasoning leads us to the conclusion that article II, section 37 also applies to the initiative process. Furthermore, the purposes underlying this constitutional provision apply equally to initiatives and to statutes.

The purpose of article II, section 37 is to disclose the effect of the new legislation and its impact on existing laws. *Washington Educ. Ass'n v. State*, 93 Wn.2d 37, 39, 604 P.2d 950 (1980). Article II, section 37 sought to remedy the practice of amending or revising laws by additions or alterations which, without the presence of the original law, were usually unintelligible. *Yelle v. Bishop*, 55 Wn.2d 286, 299, 347 P.2d 1081 (1959).

Initiative 593 did set out the entire text of RCW 9.94A.120 and .030, which were actually amended by the Initiative. Voters Pamphlet, *supra* at 14-22. However, the Defendant argues that all statutes which may, in certain cases, be affected by the new law (including the statutes which set forth the maximum sentences for individual crimes) also should have been set forth in full in the voters pamphlet. Specifically, the Defendant argues that because the new law would affect maximum penalty provisions of RCW 9A.20, that law had to be set forth in full in the voters pamphlet. We disagree.

We have explained that when an act is complete in

itself, and does not require reference to other statutes to understand its purpose and meaning, such an act is not within the contemplation of article II, section 37. *Yelle,* 55 Wn.2d at 299. This court has set out a two-part conjunctive test for determining if a law violates section 37:

> "Is the new enactment such a complete act that the scope of the rights or duties created or affected by the legislative action can be determined without referring to any other statute or enactment?
>
> . . . .
>
> . . .Would a straightforward determination of the scope of rights or duties under the existing statutes be rendered erroneous by the new enactment?"

*Washington Educ. Ass'n v. State,* 97 Wn.2d 899, 903, 652 P.2d 1347 (1982) (citations omitted) (quoting *Washington Educ. Ass'n v. State,* 93 Wn.2d at 40-41).

We conclude that Initiative 593 passes the first part of the *Washington Educ. Ass'n* test. In the case of Initiative 593, the penalties imposed can be determined without referring to any other statute and therefore the Initiative is a complete act. There is no question what the new Persistent Offender Accountability Act is amending or its effect on existing statutes. Section 2(4) of Initiative 593,[2] set out in the voters pamphlet, stated:

> A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . *notwithstanding the maximum sentence under any other law.*

Voters Pamphlet, *supra* at 14 (emphasis added).

The Defendant argues that the above-quoted section conflicts with section 2(11) of Initiative 593.[3] Section (2)(11) of the Initiative states that a court may not impose a sentence providing for a term of confinement which exceeds the statutory maximum for the crime as provided

---

[2]Codified as RCW 9.94A.120(4).

[3]Codified as RCW 9.94A.120(12) (1995).

in chapter 9A.20 RCW. Section (2)(11) was set forth in the voters pamphlet along with section 2(4), as were the definitions of "persistent offender" and "most serious offense." Although section (2)(11) refers to the statute setting maximum penalties for specific crimes, section 2(4) specifically creates an exception, and imposes a greater punishment, when an offender is a "persistent offender." All of this language was set forth in full in the voters pamphlet and is part of the same section of the SRA. We conclude that the new law is a complete act and that its meaning can be determined without referring to any other enactment.

The Defendant also argues that the Initiative fails the second part of the *Washington Educ. Ass'n* two-part test. The Defendant argues that because the Persistent Offender Accountability Act will in some cases cause the imposition of a greater sentence than the maximum set in RCW 9A.20, RCW 9A.20 was amended and must also have been set forth in the voters pamphlet.

██ We have repeatedly held that if an act is complete, it is not invalid under article II, section 37 even though the new law amends by implication other legislation upon the same subject. In discussing part two of the article II, section 37 test, this court explained that our prior cases have found constitutional the modification of existing law by a complete statute:

"It [article II, section 37] was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, *although its effect should be to enlarge or restrict the operation of some other statutes.*"

*Washington Educ. Ass'n*, 97 Wn.2d at 906 (emphasis added) (quoting *Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 80-81, 109 P. 316 (1910)).

We went on to concede that "[u]ndoubtedly, modification of existing laws by a complete statute renders the existing law by itself 'erroneous' in a certain sense," but that the purpose of article II, section 37 is to protect the

members of the legislature and the public against fraud and deception—not to trammel or hamper the legislature in the enactment of laws. *Washington Educ. Ass'n*, 97 Wn.2d at 906.

In this case, Initiative 593 set out fully the provisions of the statute which are directly amended by the new law. Its effect, to restrict the effect of the maximum penalty statute, is obvious from the language, which states that a life sentence is to be imposed on persistent offenders "notwithstanding the maximum sentence under any other law." Voters Pamphlet, *supra* at 14. Many cases are in accord with *Washington Educ. Ass'n*, 97 Wn.2d 899, in holding that article II, section 37 is not violated when complete acts incidentally or impliedly amend prior acts. *E.g., Johnson v. Department of Licensing*, 71 Wn. App. 326, 334, 858 P.2d 1112 (1993); *Vasey v. Snohomish County*, 44 Wn. App. 83, 96-97, 721 P.2d 524 (1986); *Naccarato v. Sullivan*, 46 Wn.2d 67, 75, 278 P.2d 641 (1955); *Nearing v. Golden State Foods Corp.*, 52 Wn. App. 748, 752 n.3, 764 P.2d 242 (1988), *aff'd*, 114 Wn.2d 817 (1990). Recently we reiterated that article II, section 37 is not violated when a complete act adopts by reference provisions of prior acts. *In re Lord*, 123 Wn.2d 296, 325, 868 P.2d 835, *clarified*, 123 Wn.2d 737, *cert. denied*, 115 S. Ct. 146 (1994). In Initiative 593, all of the language when read together explains that the maximum penalty for a crime will be set by RCW 9A.20, but will be life imprisonment for persistent offenders notwithstanding the maximum sentences set in that statute.

When reading a new statute, a citizen or legislator must not be required to search out other statutes which are amended to know the law on the subject treated in the new statute. The new statute must either be complete in itself or it must show explicitly how it relates to statutes that it amends. *Washington Educ. Ass'n*, 93 Wn.2d at 39. Initiative 593 is both complete in itself and shows how it relates to other statutes setting out maximum penalties

for crimes. We conclude it does not violate article II, section 37.

## Article II, Section 19

The Defendant argues that Initiative 593 violates article II, section 19 because it contains two distinct subjects: (1) provisions for life imprisonment for three-time "persistent offenders" convicted of most serious offenses, and (2) provisions making certain other offenders ineligible during mandatory minimum terms for any form of early release.

Article II, section 19 provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title."

■ The purposes of article II, section 19 are to (1) prevent "logrolling," or pushing legislation through by attaching it to other necessary or desirable legislation, and (2) assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws. *Flanders v. Morris*, 88 Wn.2d 183, 187, 558 P.2d 769 (1977); *Washington Fed'n of State Employees*, 127 Wn.2d at 552.

■ We have repeatedly held that article II, section 19 is to be liberally construed so as to sustain the validity of a legislative enactment. *Washington Fed'n of State Employees*, 127 Wn.2d at 555; *State v. Grisby*, 97 Wn.2d 493, 498, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington*, 459 U.S. 1211 (1983).

■ ■ Article II, section 19 applies to initiative measures. This constitutional provision is applied to the ballot title where an initiative to the people is concerned. *Washington Fed'n of State Employees*, 127 Wn.2d at 548, 551-55.

The ballot title of Initiative 593 states:

> Shall criminals who are convicted of "most serious offenses" on three occasions be sentenced to life in prison without parole?

Titles may be restrictive or general. *Washington Fed'n of State Employees,* 127 Wn.2d at 555. A restrictive title is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation. *E.g., Daviscourt v. Peistrup,* 40 Wn. App. 433, 439, 698 P.2d 1093, *review denied,* 104 Wn.2d 1008 (1985). The title of Initiative 593 is restrictive in that it refers only to criminals who have committed serious offenses on three occasions. If a title is general, it will be given a liberal construction; if the title is restrictive, it will not be regarded so liberally, and the provisions which are not fairly within it will not be given force. *State ex rel. Toll Bridge Auth. v. Yelle,* 32 Wn.2d 13, 26, 200 P.2d 467 (1948).

■ However, in this case we need not decide whether the part of the Initiative which concerns early release is beyond the scope of the ballot title because the part of the law which is involved in the case before us now is clearly within the scope of the title of the Initiative. *See, e.g., Municipality of Metropolitan Seattle v. O'Brien,* 86 Wn.2d 339, 349, 544 P.2d 729 (1976); *Daviscourt,* 40 Wn. App. at 439-40 and cases cited therein; *Power, Inc. v. Huntley,* 39 Wn.2d 191, 200, 235 P.2d 173 (1951) (quoting *Jackson v. State ex rel. South Bend Motor Bus Co.,* 194 Ind. 248, 259, 142 N.E. 423 (1924) ("if only one subject is embraced in the title, then any subject not expressed in the title that is embraced in the body of the act, may be rejected, and the part that is expressed in the title [should] be allowed to stand").

■ The ballot title to Initiative 593 contains only one subject, persistent offenders; hence, any provisions in the law which relate to that subject are valid under article II, section 19.

## Bill of Attainder

The Defendant argues that the Persistent Offender Accountability Act is a bill of attainder and therefore violates Article I, Section 10 of the Federal Constitution and article I, section 23 of the Washington Constitution.

█ Article I, section 23 of the Washington Constitution provides that "No bill of attainder . . . shall ever be passed." This prohibition applies to any form of legislative action, including direct action by the people. *Washington Fed'n of State Employees*, 127 Wn.2d at 560. Article I, Section 10 of the United States Constitution provides that "No state shall . . . pass any bill of attainder." The Defendant does not contend that any different analysis is applied under the federal and state constitutions.

█ The bill of attainder clause was intended to prohibit trials by the legislature, and it forbids the imposition of punishment by the legislature on specific persons. *United States v. Brown*, 381 U.S. 437, 442, 445, 85 S. Ct. 1707, 14 L. Ed. 2d 484 (1965). A bill of attainder is a legislative act which applies to named individuals or to easily ascertained members of a group in such a way as to inflict punishment on them without judicial trial. *State v. Scheffel*, 82 Wn.2d 872, 881, 514 P.2d 1052 (1973) (citing *United States v. Brown*, 381 U.S. 437). The prohibitions on bills of attainder prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229 (1994).

In order for a legislative enactment to be deemed a bill of attainder, it must specify the affected persons, it must inflict punishment, and it must lack judicial trial. *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 847, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984).

█ The first element is not present in this case as the Persistent Offender Accountability Act does not specify the persons sought to be punished or identify them by past conduct. In *Selective Service*, the Supreme Court found that a statute denying federal financial aid to male students who had failed to register for the draft was not a bill of attainder *based on past conduct* since the statute gave nonregistrants 30 days after receiving notice they were ineligible for aid to register and thereby avoid the loss of aid. Similarly, in the case of the Persistent Of-

fender Accountability Act, those with two convictions for most serious offenses can avoid the enhanced sentence by not committing the third offense. In *Scheffel*, 82 Wn.2d 872, this court held that the Habitual Traffic Offenders Act was not unconstitutional on the theory that it constituted a bill of attainder as to the defendants, who had already accrued two of the stipulated three drunk-driving convictions prior to the effective date of the act. Since the proscription against bills of attainder reaches only statutes that inflict punishment on specified individuals or groups, it does not apply to the Persistent Offender Accountability Act since those persons subject to a life sentence are not identifiable until they commit the third offense after the effective date of the law.

The third characteristic of a bill of attainder is also not present in the Persistent Offender Accountability Act since a trial is required to determine the guilt of a defendant, and a judicial sentencing hearing is necessary to determine the existence of the two prior "strike" offenses. The requisite fact-finding is performed by the judiciary, not by the legislature.

We hold the Persistent Offender Accountability Act is not a bill of attainder.

Sentence Imposed Without Statutory Authority

The Defendant argues that the trial court was without statutory authority to impose the sentence of life imprisonment. He argues that even if the Initiative is constitutional, the sentence imposed exceeded the statutory authority of the trial court. The Defendant relies on RCW 9.94A.120(12), which states:

> Except as provided under [statute sections not applicable in this case], a court may not impose a sentence providing for a term of confinement . . . which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW.

The Defendant argues that RCW 9.94A.120(12) divests a

sentencing court of authority to impose a term of confinement exceeding the statutory maximum set forth in RCW 9A.20. The Defendant argues that there is an irreconcilable conflict between RCW 9.94A.120(4) and (12).[4] We find this argument unsustainable.

RCW 9.94A.120(4) provides in relevant part:

> A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . *notwithstanding the maximum sentence under any other law.*

(Emphasis added).

A statute must be read as a whole, giving effect to all of the language used. Each provision must be viewed in relation to other provisions and harmonized, if at all possible, to insure proper construction of every provision. *E.g., State v. Young*, 125 Wn.2d 688, 696, 888 P.2d 142 (1995). In reading these two subsections together, it is clear the sentence for a persistent offender is controlled by RCW 9.94A.120(4), notwithstanding the maximum term for the current offense for a defendant who is not adjudged to be a persistent offender. Subsection (4) applies when an offender has committed three serious offenses, regardless of the maximum penalty otherwise set for the most current offense. We conclude the sentencing court did have statutory authority to impose a life sentence under the persistent offender section of the SRA.

## Separation of Powers

The Defendant argues that the Persistent Offender Ac-

---

[4]Without the Persistent Offender Accountability Act, the statutory maximum for the crimes for which the Defendant was convicted is life imprisonment. RCW 9A.20.021(1)(a). The Snohomish County Prosecutor argues there is no conflict between the statutory maximum for the Defendant's current crimes and the sentence imposed on him as a persistent offender since both sentences are life imprisonment. The State argues that since there is no such thing as "parole" under the SRA, the Defendant's argument that there is a conflict between the two sentences is factually incorrect. Whether or not the Defendant has standing to argue there is a conflict between subsection (4) and subsection (12) of RCW 9.94A.120, we decide this issue because it arises whenever a defendant is sentenced under the persistent offender law if anything less than a class A felony is the present crime. *See* RCW 9A.20.021(b).

countability Act is an unconstitutional violation of the separation of powers doctrine because: (1) it vests in the prosecutor, an arm of the executive branch of government, the power to "veto" discretionary sentencing decisions that are the province of the judiciary, or unlawfully delegates a legislative function (setting sentences) to the executive branch; or (2) it removes the court's right to exercise discretion during the sentencing process.

Article IV, section 1 of Washington's constitution vests the judicial power of this state in a separate branch of government—the judiciary. *Washington State Bar Ass'n v. State*, 125 Wn.2d 901, 906, 890 P.2d 1047 (1995). Legislation which violates the separation of powers doctrine is void. *Washington State Bar Ass'n*, 125 Wn.2d at 906.

(1) Prosecutorial discretion. The Defendant's argument that the prosecutor's broad discretion to seek or not seek the persistent offender penalty in any particular case is unconstitutional is premised on the erroneous assumption that the persistent offender sections of the SRA give the prosecutor that authority.

The prosecuting attorney in this case takes the position that, although a prosecutor has discretion in determining what charges to file, the Persistent Offender Accountability Act does not give the prosecutor a veto over persistent offender sentencing. We agree.[5]

██ ██ In construing the meaning of the Persistent Offender Accountability Act, we apply general rules of statutory construction. *Western Petroleum Importers, Inc. v. Friedt*, 127 Wn.2d 420, 423, 899 P.2d 792 (1995). Those rules provide that where the language of the enactment is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment

---

[5]In a companion case, *State v. Rivers*, 129 Wn.2d 697, the King County Prosecutor argues that the Persistent Offender Accountability Act is patterned after and is to be interpreted in the same manner as the habitual criminals statute, RCW 9.92.090. Under the habitual criminals statute, a prosecuting attorney has discretion to decide whether to charge a defendant as a habitual criminal. *See State v. Pettitt*, 93 Wn.2d 288, 609 P.2d 1364 (1980). We reject the King County Prosecutor's interpretation of the new law.

is not subject to judicial interpretation. *City of Tacoma v. State*, 117 Wn.2d 348, 356, 816 P.2d 7 (1991).

 However, if there is some ambiguity in the language of the Persistent Offender Accountability Act, then the intent behind the enactment becomes relevant, and judicial interpretation should focus on the collective intent of the people in enacting the law. *City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 97-98, 758 P.2d 480 (1988).[6] Where possible, the intent of the electorate is to be derived initially from the language of the statute itself, *see In re Williams*, 121 Wn.2d 655, 663, 853 P.2d 444 (1993), but statements contained in the official voters pamphlet also may be considered to ascertain the collective purpose and intent of the people. *Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 460, 722 P.2d 808 (1986).

 The Persistent Offender Accountability Act did not amend or replace the habitual criminals statute. Instead, it was enacted as an amendment to the SRA. As such, the persistent offender law must be read in light of the SRA. In *Western Petroleum*, 127 Wn.2d at 428, this court recently held:

> When construing a statute we must read it in its entirety, not piecemeal, and interpret the various provisions of the statute in light of one another. *In re Bible*, 69 Wn. App. 394, 399, 845 P.2d 1336 (1992) (citing *State v. Parker*, 97 Wn.2d 737, 649 P.2d 637 (1982)). "An original act and an amendment to it should be read and construed as one law passed at the same time." *Amburn v. Daly*, 81 Wn.2d 241, 246, 501 P.2d 178 (1972).

A purpose of the SRA is to ensure that punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history. RCW 9.94A.010(1). To effectuate this purpose the SRA establishes sentencing guidelines and requires that those

---

[6]An ambiguity exists if the language of the enactment is susceptible to more than one reasonable interpretation. *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 459, 869 P.2d 56 (1994).

guidelines and prosecuting standards apply "equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. Sentences are determined based on the seriousness level of the crime committed and on the prior convictions of the defendant. RCW 9.94A.350-.360.

A prosecutor may negotiate plea agreements, but "in no instance may the prosecutor agree not to allege prior convictions" of a defendant as part of a plea agreement. RCW 9.94A.080(6).

In order for a sentencing judge to impose a sentence under the SRA, the judge must receive, generally from the prosecutor, a list of the prior offenses of the defendant. Once the prior offenses and the seriousness level of the crimes are determined, the sentencing decision is limited by the terms of the SRA.

Unlike the habitual criminals statute, which could apply to a relatively minor crime like petit larceny as well as to serious felonies, RCW 9.92.090, application of the Persistent Offender Accountability Act is limited to persons convicted on three occasions of serious crimes. *See* RCW 9.94A.030(23) (defining "most serious offense") and .030(27) (defining "persistent offender"). Only certain crimes and certain offenders are subject to its terms. However, where an offender fits within the definition of "persistent offender," the sentencing terms of the law are mandatory.

The Persistent Offender Accountability Act, in amending RCW 9.94A.120, states:

> When a person is convicted of a felony, the court shall impose punishment as provided in this section.
>
> (1) Except as authorized in subsections (2), (4), (5), and (7) of this section, the court shall impose a sentence within the sentence range for the offense.
>
> (2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the

purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

. . . .

*(4) A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . notwithstanding the maximum sentence under any other law. . . . The foregoing minimum terms of total confinement are mandatory and shall not be varied or modified as provided in subsection (2) of this section. . . .*

LAWS OF 1994, ch. 1, § 2 (Initiative 593, approved November 2, 1993) (emphasis added).

■■■ The language of the statute is unambiguous in its requirement that every persistent offender, as defined in RCW 9.94A.030(27), must be sentenced to life imprisonment without possibility of parole. There is no room for prosecutorial discretion.

Additionally, we believe this conclusion best reflects the intent of the voters in enacting the law. *Western Petroleum*, 127 Wn.2d at 424. The law itself contains the following statement of "Findings and intent":

(1) The people of the state of Washington find and declare that:

(a) Community protection from persistent offenders is a priority for any civilized society.

(b) Nearly fifty percent of the criminals convicted in Washington state have active prior criminal histories.

(c) Punishments for criminal offenses should be proportionate to both the seriousness of the crime and the prior criminal history.

(d) The public has the right and the responsibility to determine when to impose a life sentence.

(2) By sentencing three-time, most serious offenders to prison for life without the possibility of parole, the people intend to:

(a) Improve public safety by placing the most dangerous criminals in prison.

(b) Reduce the number of serious, repeat offenders by tougher sentencing.

(c) *Set proper and simplified sentencing practices that both the victims and persistent offenders can understand.*

(d) Restore public trust in our criminal justice system by directly involving the people in the process.

RCW 9.94A.392 (emphasis added).

The voters pamphlet gave this additional explanation:

This initiative would create a new category of "persistent offenders" consisting of persons who have been convicted three or more times of "most serious crimes." . . . When a "persistent offender" is sentenced, the initiative would require the judge to impose a sentence of total confinement for life without possibility of parole.

Voters Pamphlet, *supra* at 5.

The statement in favor of the Initiative and the rebuttal of the statement against the Initiative stated in part:

Under 593, anyone convicted of a third violent offense goes to prison for life. No early release. No parole. No furloughs. No loopholes. Three strikes and you're out.

Initiative 593 brings accountability and the certainty of punishment back to our criminal justice system. . . .

593's opponents claim that violent offenders can already be locked up for life. The problem is, they aren't. That will change when 593 becomes law. . . .

Voters Pamphlet, *supra* at 4.

The statement against the initiative read:

We can use current law *now* to put away, for a long time, those who need to be put away. 593 takes away the power to *choose* who should be locked up for life.

Voters Pamphlet, *supra* at 5.

Both the language of the statute and the underlying intent of the statute, as shown through the law itself and

the voters pamphlet, show that the people in enacting the Persistent Offender Accountability Act intended that it provide a mandatory sentence based on the seriousness of the crime and a predetermined number of prior convictions for the most serious offenses. There is no room for prosecutorial discretion.

(2) Judicial discretion. The Defendant also argues that the Persistent Offender Accountability Act unlawfully removes the right of the sentencing court to exercise discretion in sentencing. This argument is based upon an assumption that the judiciary has a constitutionally based right to determine the length of any particular sentence.

██ As we have consistently held, the determination of penalties for crimes is a legislative function. *State v. Le Pitre*, 54 Wash. 166, 169, 103 P. 27 (1909) (it is within the power of the legislature to provide the minimum and maximum terms of a sentence); *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937) ("The legislative authority of the state is vested in the legislature, subject to the initiative . . . . Fixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions against excessive fines and cruel and inhuman punishment."); *State v. Ritchie*, 126 Wn.2d 388, 394, 894 P.2d 1308 (1995) (fixing of punishment for crimes is a legislative function). *See also* DAVID BOERNER, SENTENCING IN WASHINGTON § 3.3, at 3-4 (1985). ("[I]t would appear that in Washington the question of the location of the power to fix the substance and nature of punishment for crimes is as well-settled as any issue of constitutional law ever is. The Washington courts have never found the legislative establishment of limitations on or the total exclusion of judicial discretion in sentencing to be a violation of judicial power.")

In *State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986), we considered whether the SRA violated the separation of powers doctrine and we expressly held that it did not. *See*

*also State v. Lewis,* 115 Wn.2d 294, 306, 797 P.2d 1141 (1990). *Ammons* held that the defendants' theory—that the enactment of the SRA impinged upon the judicial power to sentence—was based upon a faulty premise because the legislature, not the judiciary, has the authority to determine the sentencing process. *Ammons,* 105 Wn.2d at 180. As we stated in *Ammons,* 105 Wn.2d at 181, whatever discretion a trial court has in sentencing is discretion that is granted by the legislature.

We believe the trial judge—the individual having the knowledge, experience and judgment in this area, and having the best opportunity to observe and evaluate a particular defendant—is best suited to determine an appropriate and fair sentence in any given case. The trial judge has the opportunity to observe the defendant, to learn the extent and the details of his or her criminal history, to hear the specific circumstances of the crime and the impact on its victims, and to compare the defendant and the crime with other offenders and crimes in the community. Thus, in our view, it is the trial judge who is in the best position to fashion a just punishment that meets the demands of society for protection and retribution. However, we find no *constitutional right* on the part of a trial judge to make that determination. Under the Persistent Offender Accountability Act the legislating body—in this case the electorate—has, as a matter of policy, determined that there will be no mitigating circumstances that justify a departure from the harsh penalty imposed on repeat offenders of the most serious crimes.

 The Persistent Offender Accountability Act does not grant discretion to either the judiciary or the prosecutor in the sentencing of persistent offenders.[7] Because the fixing of penalties belongs to the legislative branch of government and because that branch, through the elector-

[7]Unlike the California three strikes law, recently discussed in *People v. Superior Court of San Diego County,* 13 Cal. 4th 497, 917 P.2d 628, 53 Cal Rptr. 2d 789 (1996), the Washington three strikes law gives neither the prosecutor, nor the trial court, the discretion to ignore prior crimes during the sentencing procedure. Unlike the California law which created a potential

ate, has fixed the penalty mandated under the Persistent Offender Accountability Act, there is no violation of the separation of powers doctrine in this case. We caution, however, that although the legislative branch of government has the power to set the punishment for criminal offenses, this power is not absolute. It is subject to the constitutional prohibition against cruel punishment.

## Void for Vagueness and Equal Protection

The Defendant argues that the Persistent Offender Accountability Act is vague and violates equal protection guarantees because the prosecutors in the different counties in the state are affording different due process protections. The Defendant argues that this court must therefore declare the Act unconstitutional. We disagree. If a statute does not contain all of the process which is due, this court will impose the requirements necessary to satisfy due process. This court has inherent authority to supplement statutory provisions by requiring additional procedures to satisfy the requirements of procedural due process. *In re Young*, 122 Wn.2d 1, 46, 857 P.2d 989 (1993) (imposing additional procedures to ensure the sexually violent predator provisions of the Community Protection Act of 1990 are fairly enforced); *In re Harris*, 98 Wn.2d 276, 287, 654 P.2d 109 (1982) (this court has inherent power to require procedural due process). The real issue raised by the fact that different counties are applying different sentencing procedures under the new law is a due process challenge which is discussed more fully below and does not raise a viable equal protection or vagueness challenge.

We conclude that the Persistent Offender Accountability Act is not unconstitutionally vague nor does it violate equal protection guarantees. A statute is presumed to be constitutional, and the party challenging its constitutionality bears the burden of proving its unconstitutional-

separation of powers problem, the Washington law does not provide the prosecutor with the power to veto a trial judge's decision.

ity beyond a reasonable doubt. *State v. Myles*, 127 Wn.2d 807, 812, 903 P.2d 979 (1995); *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994).

Unless a statute involves First Amendment rights, a vagueness challenge will be evaluated only in light of how the statute has been applied in a particular case. *Myles*, 127 Wn.2d at 811 n.2. The Defendant does not engage in a *Gunwall*[8] analysis on this issue to show that more protections are available under the state constitution than are available under the federal constitution. Therefore, the due process vagueness challenge is decided under federal constitutional law. *E.g., Myles*, 127 Wn.2d at 811-12; *State v. Maxfield*, 125 Wn.2d 378, 394, 886 P.2d 123 (1994). Under the Fourteenth Amendment's due process clause, a statute is void for vagueness if it "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed," or if it "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Myles*, 127 Wn.2d at 812. A statute which fails to provide explicit standards to prevent arbitrary and discriminatory enforcement is unconstitutionally vague. *State v. Rhodes*, 92 Wn.2d 755, 758, 600 P.2d 1264 (1979). The Persistent Offender Accountability Act defines what crimes will be considered to be "most serious," defines the exact characteristics of a "persistent offender," and mandates a sentence of life imprisonment for all persistent offenders. Ordinary people can understand what conduct will give rise to a finding that an offender is subject to sentencing under the Persistent Offender Accountability Act. In the Defendant's case, the plain meaning of the statute made him amenable to sentencing as a persistent offender. We conclude the Act survives the vagueness challenge.

The Defendant also argues that the Persistent Offender Accountability Act violates constitutional principles of equal protection. Under the equal protection

[8]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

clause of the Washington State Constitution, article I, section 12, and the Fourteenth Amendment to the United States Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment.[9] *In re Young*, 122 Wn.2d at 44; *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). One of three tests may be used to determine whether this clause has been violated. Strict scrutiny is applied when a classification affects a suspect class or a fundamental right. Intermediate scrutiny may apply in certain circumstances, such as when a classification affects both a liberty right and a semisuspect class not accountable for its status. *Westerman v. Cary*, 125 Wn.2d 277, 294-95, 885 P.2d 827, 892 P.2d 1067 (1994). However, a statutory classification that implicates physical liberty is not subject to the intermediate level of scrutiny under the equal protection clause unless the classification also affects a semisuspect class. *Coria*, 120 Wn.2d at 171; *Ward*, 123 Wn.2d at 516. Recidivist criminals are not a semisuspect class. Therefore the proper test to be applied in these cases, where only a liberty interest is asserted, is the "rational basis" test. Under this test, a legislative classification will be upheld unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives. *Coria*, 120 Wn.2d at 171, 172 n.4; *State v. Shawn P.*, 122 Wn.2d 553, 561 n.28, 859 P.2d 1220 (1993). The burden is on the party challenging the classification to show that it is purely arbitrary. *Coria*, 120 Wn.2d at 172.

▮▮▮▮▮ Here, the purpose of the law is to improve public safety by placing the most dangerous criminals in prison; reduce the number of serious, repeat offenders by tougher sentencing; set proper and simplified sentencing

---

[9]The Defendant does not argue that more protections are available under the state constitution than under the federal constitution, and, in any event, the right to equal protection under the law guaranteed by Amendment XIV, Section 1 of the United States Constitution and by the privileges and immunities clause of the Washington Constitution, article I, section 12, are the same. *E.g., State v. Shawn P.*, 122 Wn.2d 553, 560-61, 859 P.2d 1220 (1993); *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991).

practices that both the victims and persistent offenders can understand; and restore public trust in our criminal justice system by directly involving the people in the process. RCW 9.94A.392. The rational basis test requires only that the statute's means are rationally related to its goal, not that the means are the best way of achieving the goal. *Coria*, 120 Wn.2d at 173. The legislating body has broad discretion to determine what the public interest demands and what measures are necessary to protect that interest. *Ward*, 123 Wn.2d at 516. The classification of criminals as "persistent offenders" based on having committed three serious offenses is rationally related to the goals enunciated in the Act. A state is justified in punishing a recidivist more severely than it punishes a first offender. *In re Grisby*, 121 Wn.2d 419, 429, 853 P.2d 901 (1993) (citing *Solem v. Helm*, 463 U.S. 277, 296, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)).

We find that the Persistent Offender Accountability Act passes the rational basis test of the equal protection guarantee.

## Cruel and Unusual Punishment

The Defendant argues that his sentence, imposed pursuant to the Persistent Offender Accountability Act, is grossly disproportionate to his crimes and therefore violates the federal and state constitutional prohibitions against cruel and unusual punishment.

The Eighth Amendment to the United States Constitution bars cruel and unusual punishment. This state's constitution bars cruel punishment. WASH. CONST. art. I, § 14.

In *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980), this court held the state constitutional provision barring cruel punishment is more protective than the Eighth Amendment.[10] Because we hold that the sentence imposed

---

[10]In *State v. Dodd*, 120 Wn.2d 1, 21, 838 P.2d 86 (1992), this court held that, under the unique facts of that particular case, article 1, section 14 of this state's

upon the Defendant under the Persistent Offender Accountability Act does not violate the more protective state constitutional guarantee against cruel punishment, we do not additionally examine the Defendant's claim under the Eighth Amendment.[11]

The defendant in *Fain* was found to be a habitual criminal under RCW 9.92.090 after being convicted of second degree theft. This court, in finding the sentence of life imprisonment to be violative of the state constitutional prohibition against cruel punishment, emphasized that the court

> must and do[es] defer to the legislative decision to impose an enhanced penalty on recidivists. Yet, legislative authority is ultimately circumscribed by the constitutional mandate forbidding cruel punishment.

*Fain*, 94 Wn.2d at 402 (citation omitted).

*Fain* enunciated four factors to be considered in analyzing claims of cruel punishment. Those factors are: (1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction. *Fain*, 94 Wn.2d at 397.

The offenses committed by the Defendant in this case (robbery in the first degree and kidnapping in the first degree) are defined as most serious offenses under the statute. RCW 9.94A.030(23). Further, the nature of robbery and of kidnapping includes the threat of violence against

---

constitution did not extend greater protection than the Eighth Amendment to the federal constitution and did not bar that capital defendant from waiving general review. This ruling in *Dodd* is limited to the facts of that case.

[11]Our examination of the Defendant's claim is not intended to resolve all article I, section 14 challenges to sentences imposed under the Persistent Offender Accountability Act. We recognize there may be cases in which application of the Act's sentencing provisions runs afoul of the constitutional prohibition against cruel punishment.

another person.[12] The crimes committed by the Defendant are far more serious than the second degree theft committed by the defendant in *Fain*.

The purpose behind the Persistent Offender Accountability Act is set forth above. Additionally, as stated by the Supreme Court in *Rummel v. Estelle*, 445 U.S. 263, 284-85, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), the purpose of a repeat or persistent offender statute is

> to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the

---

[12]RCW 9A.56.190 defines robbery as follows:

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

Robbery in the first degree is defined in RCW 9A.56.200 as follows:

(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

(a) Is armed with a deadly weapon; or

(b) Displays what appears to be a firearm or other deadly weapon; or

(c) Inflicts bodily injury.

(2) Robbery in the first degree is a class A felony.

Kidnapping in the first degree is defined in RCW 9A.40.020, as follows:

(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:

(a) To hold him for ransom or reward, or as a shield or hostage; or

(b) To facilitate commission of any felony or flight thereafter; or

(c) To inflict bodily injury on him; or

(d) To inflict extreme mental distress on him or a third person; or

(e) To interfere with the performance of any governmental function.

(2) Kidnapping in the first degree is a class A felony.

rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

■■ The purpose of the Persistent Offender Accountability Act thus includes deterrence of criminals who commit three "most serious offenses" and the segregation of those criminals from the rest of society.

■■ The third *Fain* factor we consider is the punishment that defendants would have received in other jurisdictions. Washington's so-called "three strikes" law is similar to state and federal legislation throughout much of the United States. *See* Benekos & Merlo, *supra*; Thomas R. Goots, Comment, *"A Thug in Prison Cannot Shoot Your Sister": Ohio Appears Ready to Resurrect the Habitual Criminal Statute—Will it Withstand an Eighth Amendment Challenge?*, 28 AKRON L. REV. 253 (1995); Owens, *supra*. It is likely the Defendant would have received a similar, harsh sentence for his third serious offense under the majority of jurisdictions in this country. The penalties vary, but many include life sentences for three-time offenders. This court has held that the distinction between life sentences with and without parole is not significant. *In re Grisby*, 121 Wn.2d at 427.

The final *Fain* factor requires an analysis of the punishment the Defendant might receive for other offenses in this jurisdiction. Under the Persistent Offender Accountability Act, all defendants who are convicted of a third "most serious offense" receive sentences of life imprisonment without possibility of parole. The offenses which are the basis for the convictions and sentence in this appeal are serious, violent offenses, which the people of this state

have determined call for serious punishment. This court has previously held that a life sentence imposed upon a defendant who, after being convicted of robbery, was determined to be a habitual criminal was not cruel and unusual punishment. *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976). The *Lee* court held:

> Appellant's sentence does not constitute cruel and unusual punishment. The life sentence contained in RCW 9.92.090 is not cumulative punishment for prior crimes. The repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime. Appellant's prior convictions were for robbery, two burglaries in the second degree, and assault in the second degree. He received the life sentence for the second robbery conviction. His punishment is not disproportionate to the underlying offense.

*Lee*, 87 Wn.2d at 937 (citation omitted). *See also Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (holding a sentence of life imprisonment without possibility of parole for the crime of possessing cocaine did not violate the Eighth Amendment); *Rummel*, 445 U.S. 263 (sentence of life imprisonment for three minor theft felonies did not constitute cruel and unusual punishment).

█ Based on a consideration of the *Fain* factors, we hold that the sentence of life imprisonment without possibility of parole is not grossly disproportionate to the offenses committed in this case.

## Procedures Required by Due Process

The Defendant argues that his right to procedural due process was violated. He argues that he should have been formally charged by information with being a persistent offender, that he had a right to a jury trial at sentencing, and that the proof of his prior convictions should have been "beyond a reasonable doubt." The Defendant does not engage in a *Gunwall* analysis to show the state constitution affords greater protection in these three areas. The

Defendant urges this court to find that the same procedures which were required under the habitual criminals act[13] should also be required under the new law. Although there are some similarities between the two laws, there are also significant differences in that the crimes used to determine habitual criminal status under the older habitual criminals act were much less serious than the "most serious offenses" necessary to find a defendant to be a persistent offender under the new law. The habitual criminals act provided for life imprisonment when one who had previously twice been convicted in this state or elsewhere of a felony was convicted of any crime of which fraud or intent to defraud is an element or of petit larceny or of any felony. That act also provided that one who had been four times convicted of petit larceny, or of any misdemeanor of which fraud or intent to defraud is an element, shall be punished by life imprisonment. RCW 9.92.090.

In this case and in another case heard by this court on the same day as the present case,[14] it was argued that the new Persistent Offender Accountability Act is simply a reenactment of the old habitual criminals act. We conclude that the new law is not a reenactment of the older statute; the Persistent Offender Accountability Act is a new sentencing law which amends the SRA.

 Under the habitual criminals act, this court mandated a number of procedural safeguards, including charging by information, a right to a jury trial on the charge in the supplemental information, and proof of the "elements" of the status of being a habitual criminal beyond a reasonable doubt. *E.g., State v. Hennings*, 100 Wn.2d 379, 389, 670 P.2d 256 (1983); *State v. Murdock*, 91 Wn.2d 336, 340, 588 P.2d 1143 (1979); *State v. Starrish*, 86 Wn.2d 200, 204, 544 P.2d 1 (1975). This court recognized these features as the hallmarks of the trial on guilt or innocence. *Hennings*, 100 Wn.2d at 385. There is conflicting

---

[13]The habitual criminals act does not apply to any crimes committed after July 1, 1984. RCW 9.92.900.

[14]*State v. Rivers*, 129 Wn.2d 697.

language in the cases regarding whether the habitual criminals act contained "elements" of a "charge" or was simply a sentencing enhancement statute. *Compare Hennings*, 100 Wn.2d at 389; *Murdock*, 91 Wn.2d at 340; *State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980); *Starrish*, 86 Wn.2d at 203; *with State v. Kelly*, 52 Wn.2d 676, 677-78, 328 P.2d 362 (1958); *State v. Bryant*, 73 Wn.2d 168, 173, 437 P.2d 398 (1968). We conclude that the procedures used under the habitual criminals act do not apply to the new Persistent Offender Accountability Act. The 1909 habitual criminals act contained no procedures, and the ones imposed by this court were originally contained in the former 1903 habitual criminals act. *See State v. Gustafson*, 87 Wash. 613, 614, 152 P. 335 (1915). In contrast, the new Persistent Offender Accountability Act is a part of the SRA, which does spell out the procedures to be followed during a sentencing proceeding. The procedures contained in the SRA apply to the persistent offender law. Unless these statutory procedures violate constitutional guarantees, they must be applied to the new law. *See Western Petroleum*, 127 Wn.2d at 427 (an original act and an amendment to it should be read together and construed as one law). The legislature has the authority to determine sentencing *procedures. Ammons*, 105 Wn.2d at 180; *State v. Benn*, 120 Wn.2d 631, 671, 845 P.2d 289 (legislature's power to set sentence parameters entails the power to prescribe sentencing procedures), *cert. denied*, 114 S. Ct. 382 (1993). We do not have the right to mandate particular procedures greater than the procedures required by the statute unless the procedures run afoul of a constitutional requirement.

 We conclude that the Persistent Offender Accountability Act is a sentencing law. It was enacted and codified as a part of the SRA, and the purpose of the law is to change sentencing in Washington for those criminals who persist in committing dangerous crimes. *See* RCW 9.94A.392. We, therefore, will look first to the statute to determine what procedures are due under that law and

then ask if any of those procedures violate the guarantee of due process.

## Charging Document

The Persistent Offender Accountability Act allows, but does not mandate, notification and warning by a judge, law enforcement agency or correctional facility to offenders who have been convicted of an offense which is a "most serious offense." RCW 9.94A.393. The question before us is whether the defendant, on being accused of a *third* most serious offense, must be separately charged with being a most serious offender in a charging document.

Every essential *element of a crime* must be included in a charging document. *E.g., State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). The primary purpose of that requirement is that the accused be informed of the nature of the accusation so that he or she can prepare an adequate defense. *Kjorsvik*, 117 Wn.2d at 101. Therefore, if the Persistent Offender Accountability Act had created a separate offense and this offense had not been set forth in the charging document, then a defendant's due process rights would have been violated. *E.g., Kjorsvik*, 117 Wn.2d 93; *United States v. McGatha*, 891 F.2d 1520 (11th Cir.), *cert. denied*, 495 U.S. 938 (1990).

However, we conclude that the Persistent Offender Accountability Act is a sentencing statute and not a statute defining the elements of a crime. Initiative 593 addressed a sentencing issue, and the new law was enacted as part of the SRA. The voters pamphlet addressed only sentencing concerns, and the findings and intent section of the law discussed only sentencing issues. The new law is essentially a sentence enhancement statute which is based on the past criminal history of a defendant. Hence, no "charging document" is required with regard to the Persistent Offender Accountability Act because no crime is being charged; rather, a sentence is being imposed. *E.g., United States v. Dunn*, 946 F.2d 615, 619 (9th Cir.) (under

a recidivist statute which provides for sentence enhancement for previous felonies, the prior felonies do not have to be included in the indictment), *cert. denied,* 502 U.S. 950 (1991); *McGatha,* 891 F.2d 1520 (since the previous felony convictions necessary for sentencing are not an element of the offense for which the defendant was tried, the prior convictions need not be set forth in the indictment or proved beyond a reasonable doubt).

The Defendant argues that because the sentencing court may impose a penalty in excess of that permitted by the underlying crime, prior criminal history is like an element of the charge. We disagree and note that the Ninth Circuit has rejected a similar argument. In *Nichols v. McCormick,* 929 F.2d 507, 509 (9th Cir. 1991) (citing *LaMere v. Risley,* 827 F.2d 622 (9th Cir. 1987)), *cert. denied,* 502 U.S. 1115 (1992), the court held that a sentencing factor need not be included in the charging document even when the statute allows the sentencing court to impose a penalty in excess of that permitted by the underlying offense. A legislature has substantial discretion in defining whether a fact constitutes an element of a crime or a sentencing enhancement factor. *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986). A defendant's criminal history is a factor which has traditionally been considered by sentencing courts, and the legislature is well within its discretion in defining past crimes as sentencing factors rather than elements of a charge. *See McGatha,* 891 F.2d at 1526 (recidivist statutes have historically been recognized as sentencing statutes, not as separate offense statutes).

Although no formal charge need be filed in order to sentence a defendant as a persistent offender, we approve of the State's practice of giving notice that a defendant may be found to be a persistent offender. In this case, the Defendant was informed early in the process that sentencing under the Persistent Offender Accountability Act would be sought by the State. Even before charging, the Defendant was informed in the Affidavit of Probable Cause

that he had committed two most serious offenses in the past and that, if convicted of the current charge, he would face a mandatory sentence of life without the possibility of parole. We note that in King County, it is the practice of the prosecutor to give early notice to a defendant who may be convicted of the third most serious offense. In *State v. Rivers*, 129 Wn.2d 697, heard on the same day as this case, the King County Prosecutor filed a "Notice of Intent to File Persistent Offender Allegation" at the time of arraignment as a separate document from the information charging the underlying crime. In *State v. Manussier*, 129 Wn.2d 652, also heard as a companion case to this case and the *Rivers* case, the Pierce County Prosecutor filed a "Most Serious Offense Notice," informing the defendant that he would be classified as a persistent offender and sentenced to life imprisonment without parole under RCW 9.94A.120(4) if he had twice before been convicted of "most serious offenses." We specifically approve of the State giving the accused early notice of the sentence provided by the Persistent Offender Accountability Act when a defendant is accused of committing a third most serious offense. Although formal charging is not constitutionally mandated because the Act involves sentencing and not filing of a criminal charge, we nonetheless find early notice of the potential sentence to be appropriate. There may be cases in which the failure to give any notice would have constitutional implications. However, since there was early actual notice in the case before us, we decline to speculate on any possible prejudice to future defendants who lacked notice of the State's intent to prove the defendant was a persistent offender.

## Right to Jury Trial

■ Under the SRA, the trial court must conduct a sentencing hearing and, if the court decides by a preponderance of the evidence that a defendant has a criminal history, the court must specify the convictions it has found to exist. RCW 9.94A.110. This procedure applies to

sentencing under the new persistent offender section of the SRA. RCW 9.94A.110, .120. The court, not a jury, makes this determination under the SRA. We have found that procedure to be constitutional. *Ammons*, 105 Wn.2d 175.

■ Additionally, the United States Supreme Court has repeatedly held that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed even where the sentence turns on specific findings of fact. *Libretti v. United States*, 516 U.S. 29, 116 S. Ct. 356, 133 L. Ed. 2d 271 (1995) (cases have made it clear that a defendant does not have a constitutional right to a jury determination at sentencing); *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990) (constitution does not require every finding of fact underlying a sentencing decision to be made by a jury); *McMillan*, 477 U.S. at 93 (Sixth Amendment does not require jury sentencing when a statute makes weapon possession a sentencing factor).

The Defendant argues that since the finding of a deadly weapon sentence enhancement factor is submitted to the jury in Washington, the persistent offender factor must also be submitted to a jury. However, this ignores that our *statutes* have required a special jury verdict on that question. Former RCW 9.95.015; RCW 9.94A.125. There is no *constitutional* requirement that a deadly weapon finding be made by the jury; if it is a sentencing factor, the sentencing court may make that finding. *McMillan*, 477 U.S. 79. Additionally, there is a substantial difference between facts which relate to the seriousness of the crime charged and facts which show the defendant's prior, unrelated criminal history. *McGatha*, 891 F.2d at 1526 (recidivist laws have no relation to the circumstances of the wrongdoing constituting the most recent offense; they do not relate to determining what the accused has done, but what the state has previously determined that he has done). The persistent offender law is more like those sections of the SRA under which a court determines a

sentence based on the offender score (which is determined by past criminal record) than it is like a statute which enhances a sentence based on a fact such as possession of a deadly weapon during the crime or sale of drugs by a school. These kinds of facts aggravate the seriousness of the crime itself. *In re Gunter*, 102 Wn.2d 769, 689 P.2d 1074 (1984) (deadly weapon); *State v. Lua*, 62 Wn. App. 34, 42, 813 P.2d 588 (sale of drugs by school), *review denied*, 117 Wn.2d 1025 (1991), *overruled in part, State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992). Under a recidivist statute, the sole concern is whether a prior conviction exists. *State v. Herzog*, 112 Wn.2d 419, 429, 771 P.2d 739 (1989).

As a practical matter, since the only two questions of fact relevant to sentencing under the persistent offender section of the SRA are whether certain kinds of prior convictions exist and whether the defendant was the subject of those convictions, we fail to see how the presence of a jury would be necessary. Prior convictions are proved by certified copies of the judgment and sentence, *Murdock*, 91 Wn.2d at 340, and identity (if contested) can be proved by fingerprints. The sentencing judge can make those determinations. While technically questions of fact, they are not the kinds of facts for which a jury trial would add to the safeguards available to a defendant. In fact, judges decide such questions of fact routinely at SRA sentencing proceedings. A certified copy of a judgment and sentence is highly reliable evidence. *State v. Gentry*, 125 Wn.2d 570, 637, 888 P.2d 1105, *cert. denied*, 116 S. Ct. 131 (1995); *see McGatha*, 891 F.2d at 1526 (prior convictions are highly verifiable matters of public record). We find no constitutional bar to the provision of the SRA which allows a trial court to conduct the sentencing proceedings. RCW 9.94A.110.

Beyond a Reasonable Doubt or Preponderance

The State must prove beyond a reasonable doubt every element of an offense charged. *State v. Alvarez*, 128

Wn.2d 1, 13, 904 P.2d 754 (1995). However, under the SRA, facts regarding prior convictions used to determine a penalty[15] need only be proved by a preponderance of the evidence. RCW 9.94A.110. We have held that this statute does not violate due process. *Ammons*, 105 Wn.2d at 185-86; *see also State v. Jones*, 110 Wn.2d 74, 77, 750 P.2d 620 (1988).

Federal cases indicate the preponderance standard does not violate the federal constitution. *E.g., Parke v. Raley*, 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992); *Mc-Gatha*, 891 F.2d at 1526-27. Since it is constitutional to use a preponderance standard to determine the existence of prior crimes in order to determine the length of a sentence under the SRA, *Ammons*, 105 Wn.2d at 185-86, we conclude the preponderance standard is also sufficient to determine the existence of prior offenses for purposes of the Persistent Offender Accountability Act.

Affirmed.

DURHAM, C.J., and DOLLIVER, SMITH, ALEXANDER, and TALMADGE, JJ., concur.

MADSEN, J. (dissenting) — The majority in this case faults the defendant for not engaging in a *Gunwall* analysis to show the state constitution affords greater due process protection for a defendant charged under Washington's persistent offender law—Three Strikes and You're Out. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R. 4th 517 (1986); Majority at 776. The majority acknowledges, however, that the defendant has cited this court's cases which guarantee a defendant, facing an enhanced punishment in excess of the statutory maximum under prior recidivist laws, the right to an information notifying of the possibility of the enhanced penalty, the

---

[15]Under the SRA, other than the offense for which a defendant is convicted, the major determinative of the defendant's presumptive sentence is the "offender score," and that in turn is based on the defendant's criminal history. *In re Williams*, 111 Wn.2d 353, 357, 759 P.2d 436 (1988).

right to have a jury determine the facts supporting an enhanced sentence, and the right to have prior convictions proven beyond a reasonable doubt. Majority at 776.

This court has stated that "resort to the *Gunwall* analysis is unnecessary" where the court has already decided that the scope of protection under both the federal and state constitution is co-extensive. *State v. Earls*, 116 Wn.2d 364, 374, 805 P.2d 211 (1991). Similarly, where this court has previously decided that the state constitution affords greater protection than the federal constitution in regard to a particular issue, there is no need to engage in a complete *Gunwall* analysis. *See State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990) (adopting analysis of first, second, third, and fifth *Gunwall* factors when same constitutional provision analyzed in previous case; only fourth and sixth factors are analyzed as applied to the particular context); *State v. Russell*, 125 Wn.2d 24, 58, 882 P.2d 747 (1994) (only fourth and sixth factors examined in light of new context), *cert. denied* 115 S. Ct. 2004 (1995). This is so because the very purpose of the *Gunwall* analysis is to determine the protection available under a particular provision of the state constitution in a given context. A reading of the state cases cited by the defendant here reveals that CONST. art. I, § 21 does guarantee greater protection in the context of sentence enhancements than the federal constitution. Since this court has already recognized greater protection *in the very context presented in this case,* it is unnecessary for the defendant to present a *Gunwall* argument to receive state constitutional protection. To hold to the contrary, as the majority does, is to elevate form over substance and to unjustly deny the defendant the protections he deserves as a Washington State citizen.

This court has recognized a duty, where feasible and practical, to resolve constitutional questions first under the provisions of this state's constitution before turning to the federal constitution. *Collier v. City of Tacoma*, 121 Wn.2d 737, 745, 854 P.2d 1046 (1993). In *Collier*, the re-

spondent argued that his rights under both CONST. art. I, § 5 and the First Amendment were violated by the City of Tacoma ordinances restricting posting of campaign signs. The respondent did not, however, present a *Gunwall* analysis. This court reached the state constitution, despite the lack of such analysis, based on the fact that the court had previously decided that the state constitution provided enhanced protections in the area of free speech. *See also City of Seattle v. Mesiani,* 110 Wn.2d 454, 755 P.2d 775 (1988); *O'Day v. King County,* 109 Wn.2d 796, 749 P.2d 142 (1988); *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986). It seems clear that where this court has spoken on the protections available under the state constitution a party may avail itself of this court's decision without the meaningless task of making a *Gunwall* argument to prove that, indeed, the state constitution guarantees enhanced protection

Further, it makes sense in this case to reach the state constitution because the U.S. Supreme Court ruled in 1933 that many provisions of the federal constitution, specifically those comprising the Bill of Rights, were not applicable to the states. *Barron v. City of Baltimore,* 32 U.S. (7 Pet.) 243, 8 L. Ed. 672 (1833). Not until the 1940s did the Supreme Court adopt its analysis of selective incorporation of federal rights through the Fourteenth Amendment to extend due process requirements to the states. *See* RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW §§ 11.4–11.7, 14.2 (4th ed. 1991). The constitutional principles in the cases relied upon by defendant could not have originated in the federal constitution.

In order to reach its conclusion, the majority ignores this court's cases and relies exclusively on federal case law. This approach is contrary to the long history of jurisprudence relating to sentence enhancements and deprives the defendant of those due process and jury trial rights guaranteed under the Washington Constitution which I have outlined in my dissenting opinion in *State v. Manussier,* 129 Wn.2d 652 (Madsen, J., dissenting).

I respectfully dissent.

JOHNSON and SANDERS, JJ., concur with MADSEN, J.

SANDERS, J. (dissenting) — I join Justice Madsen's dissent, however, write separately to restate my view expressed in my dissenting opinion in *State v. Rivers*, 129 Wn.2d 697, that the "Persistent Offender Accountability Act," also known as "Three Strikes and You're Out," unconstitutionally imposes cruel punishment contrary to Washington Constitution article I, section 14, and is therefore invalid on its face.

Reconsideration denied October 24, 1996.