**Sylvia L. SHORT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4578.**

Supreme Court of Alaska.

Sept. 28, 1979.

---

Sylvia L. Short, pro se.

Robert M. Johnson, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

Based on findings in a planning study conducted by the State Department of Transportation covering the physical-plant requirements of the Division of Corrections and the Department of Public Safety, two bills authorizing the issuance of capital improvement bonds were introduced in the 1978 session of the Alaska Legislature. Senate Bill 623 authorized the sale of bonds for construction and improvements of certain correctional facilities throughout the state and SB 625 authorized similar bonds for public safety facilities. Both of the bills essentially incorporated the cost estimates arrived at in the Department of Transportation's study. The House Finance Committee, in reviewing the senate passed bills, combined the provisions of SB 623 and SB 625 into one bill, the House Committee Substitute for Committee Substitute for Senate Bill 625. The combined bill passed both houses of the legislature and was signed into law as ch. 139, SLA 1978. Subsequently, the measure was submitted to the voters

in the 1978 general election and it passed by a narrow margin.[1]

Appellant Short filed a complaint in superior court after the election seeking to enjoin issuance and sale of the bonds authorized by ch. 139. The state opposed her motion for a preliminary injunction, joining to its memorandum a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The court ruled in favor of the state, granting its motion to dismiss. From this decision Ms. Short brings this appeal.

Appellant contends that ch. 139, SLA 1978, violates the one-subject rule of the Alaska Constitution, art. II, § 13. That provision reads:

> *Form of Bills.* Every bill shall be confined to one subject unless it is an appropriation bill or one codifying, revising, or rearranging existing laws. Bills for appropriations shall be confined to appropriations. The subject of each bill shall be expressed in the title. The enacting clause shall be: 'Be it enacted by the Legislature of the State of Alaska.'

The two subjects which are allegedly contained in the bond authorization of ch. 139 are public safety and corrections facilities. Appellant argues that these two types of facilities serve essentially different functions,[2] are under the authority of different departments of state government, and that, by coupling the two together, public support for each subject (and specifically for new correctional facilities) was improperly enhanced, where such support might not have been forthcoming had the projects been presented separately for voter approval. In making these arguments, appellant stresses the requirement of art. IX, § 8 of the Alaska Constitution that bonds for capital improvements must be approved by the voters.[3] Appellant argues that because bond propositions must be presented to the voters for ratification, the single-subject requirement should be applied more stringently.[4] Further, she argues that the validity of the legislation must be judged solely on the basis of the materials the voters had available and that, therefore, it was error for the superior court to consider the testimony of the supervisor of the planning

1. The official vote count discloses that Bond Proposition 6, which placed ch. 139, SLA 1978, before the voters, received 61,071 votes in favor of passage, with 60,561 votes opposed.

2. The public safety buildings listed in the bond proposition are facilities which are intended to accommodate the state troopers, fish and wildlife protection, a motor vehicles division, a fire prevention division, that is, "essentially all of the services that public safety needs . . . in the [Fairbanks and Soldotna regions]." In addition, the proposition provides funds for pre-trial detention facilities, juvenile offender institutions and new jail facilities in various regions of the state. In some cases the pre-trial detention structures are combined with post-conviction correction facilities for purposes of funding discrete projects.

3. Alaska Const., art. IX, § 8 provides:
   > *State Debt.* No state debt shall be contracted unless authorized by law for capital improvements and ratified by a majority of the qualified voters of the State who vote on the question. The State may, as provided by law and without ratification, contract debt for the purpose of repelling invasion, suppressing insurrection, defending the State in war, meeting natural disasters, or redeeming indebtedness outstanding at the time this constitution becomes effective.

4. The argument that measures submitted to the voters are deserving of enhanced protection under the one-subject rule of art. II, § 13 of the state constitution has little merit. Except to the extent that a bond proposition authorizing complicated and diverse projects is so confusing that it fails to provide the notice to the voters of the subject matter involved which the due process clause requires, the policies behind the one-subject rule are the same as regards the members of the state legislature who must vote on the measure in the first instance and the voters who must subsequently ratify the enactment. The one-subject rule is not restricted to those legislative acts which also must be approved by the voters; rather, it applies equally to all enactments of the legislature. Further, we have applied the provision to bond propositions in the past in the same way as it has been applied to other types of legislation. *See Gellert v. State*, 522 P.2d 1120 (Alaska 1974). Thus, there does not appear to be any valid purpose to be served by adopting a more restrictive interpretation of art. II, § 13 of the state constitution in cases where voters either initiate or ratify proposed legislation in their capacity as the larger legislative body of the state.

study mentioned previously regarding the purposes for which the funds in the bond proposition are to be used in reaching its decision on the parties' motions below.[5]

█ In *Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974), the purposes of the one-subject rule were explained in the following manner:

> It is generally agreed that the primary aim of 'one-subject' provisions in state constitutions is the restraint of log-rolling in the legislative process. Log-rolling consists of deliberately inserting in one bill several dissimilar or incongruous subjects in order to secure the necessary support for passage of the measure.[6] [citations omitted]

However, what constitutes one subject for purposes of art. II, § 13 is broadly construed. In *Gellert*, we explained:

> The constitutional provision should however, be construed with considerable breadth. Otherwise statutes might be restricted unduly in scope and permissible subject matter, thereby multiplying and complicating the number of necessary enactments and their interrelationships.[7]

Further, "[n]o act will be set aside for failing to comply with this provision except where the violation is both substantial and plain."[8]

█ A particularly important reason alluded to in *Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974), for according legislation a presumption of constitutional validity under the one-subject rule is the need to give the legislature great latitude in enacting comprehensive legislation. The one-subject provision should not be construed so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent the legislature from embracing in one act all matters properly connected with one general subject.

In light of the foregoing principles, we have concluded that the superior court cor-

---

5. This argument that, because the voters were involved in the process, the superior court could consider only the materials which were made available officially for purposes of the election in determining whether the bond proposition contained more than one subject, is without merit in our view. Since the same standards apply in judging compliance of legislative bills with the constitutional one-subject requirement as for propositions presented to the voters, *see* note 4 *supra*, it seems reasonable for the court to refer to any indications of legislative intent which are available in evaluating a particular enactment. In this case the superior court placed "heavy weight" on the testimony of the supervisor of the planning study which arrived at the figures utilized to estimate the costs of the various projects funded by ch. 139. This testimony was elicited in response to a request by the judge for testimony "from either of their sides concerning the question of exactly how the money is to be spent which was authorized to be spent under the bonding proposition in issue." This court has previously approved the development of a record in the trial court elucidating the nature and relationship of the projects involved in a bond proposition challenged for alleged violations of the one-subject rule. *See Gellert v. State*, 522 P.2d 1120, 1121 (Alaska 1974). Appellant has not suggested any viable policies which would be promoted by prohibiting a judge from seeking expert guidance concerning the particular purposes to be served by capital improvements joined together in one bond proposition, or by limiting the trial court to the information publicly distributed to the voters prior to the election in making its decision on the question of compliance with the one-subject rule.

6. This policy was similarly stated in an earlier case, *Suber v. Alaska State Bond Comm.*, 414 P.2d 546, 557 (Alaska 1966), as follows:

> The purpose of the constitutional requirement that every bill be confined to one subject, . . . is to prevent the inclusion of incongruous and unrelated matters in the same bill in order to get support for it which the several subjects might not separately command, and to guard against inadvertence, stealth and fraud in legislation.

*See also* Ruud, *No Law Shall Embrace More Than One Subject*, 42 Minn.L.Rev. 389 (1958).

7. *Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974). *See North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 545 (Alaska 1978); *Suber v. Alaska State Bond Comm.*, 414 P.2d 546, 557 (Alaska 1966) ("In construing such a provision, the court will disregard mere verbal inaccuracies, [and] resolve doubts in favor of validity . . . .").

8. *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 545 (Alaska 1978) (citation omitted). *See Suber v. Alaska State Bond Comm.*, 414 P.2d 546, 557 (Alaska 1966) ("[I]n order to warrant the setting aside of enactments for failure to comply, the violation must be substantial and plain.").

rectly resolved the one-subject issue which is raised in this appeal. In *Gellert*, the enactment at issue was a general bond obligation " 'for the purpose of paying the cost of capital improvements for flood control and small boat harbor projects.' " [9] The majority of qualified voters ratified the bond proposition in the general election and a complaint was subsequently initiated to enjoin sale of the bonds. We observed in *Gellert*:

> Ultimately the decision in cases of this kind must be made on a basis of practicality and reasonableness. In determining whether a bill is confined to one subject, we agree with the statement:
>
>> All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. [10]

Applying this test to the facts in *Gellert*, we found that the boat harbor and flood control projects comprehended in the challenged bond proposition were "all part of a cooperative water resources development program sponsored by both the state and federal governments." In *Gellert*, we further explained:

> We view these various Corps-administered projects as part of a continuing program of federal-state cooperation in water resources development, including but not limited to improvement of navigation, flood control, recreation and watershed protection.
>
> . . . [W]e perceive an underlying purpose by which the inclusion of boat harbors and flood control projects in one bill can be justified. Both these topics pertain to one ongoing plan for the development of water resources and to the method of funding that plan. In our view it is permissible, from considerations of both convenience and logic, to classify these matters as being within the confines of one subject for the purpose of legislation. [11]

▮▮▮ Thus, it is apparent that the *Gellert* test requires no more than that the various provisions of single legislative enactment fairly relate to the same subject, or have a natural connection therewith. In the case at bar, with the exception of the public safety buildings scheduled for construction in Fairbanks and Soldotna, all of the facilities relate directly to the institutionalization or incarceration of juvenile or adult offenders. Logically analyzed, it is apparent that the pre-trial detention and post-conviction correctional facilities authorized by the bond proposition both serve the general public safety function of protecting life and property, and are sufficiently related to survive the constitutional challenge presented in this case. One of the major touchstones of penal administration is the necessity of protecting the public from fur-

**9.** *Gellert v. State*, 522 P.2d 1120 (Alaska 1974).

**10.** *Id.* at 1123, *quoting Johnson v. Harrison*, 47 Minn. 575, 50 N.W. 923, 924 (1891).

**11.** 522 P.2d at 1123. Recently we decided *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534 (Alaska 1978). There the act in question was entitled "An Act Relating to Taxation." *Id.* at 544. It contained several provisions relating to credits against state income tax for residential fuel expenses and the cost of residential improvements which result in fuel conservation, and also amended the state excise tax on cigarettes. In addition, the act contained the challenged provisions relating to the application of limitations on municipal taxing authority of oil and gas properties to taxes levied to pay or secure payment of principal and interest on bonds. The superior court had held that, because matters of both state taxation and local taxation were dealt with by the act, the one-subject rule in art. II, § 13 of the constitution was violated. We reversed, holding that based on the standards articulated in *Gellert v. State*, 522 P.2d 1120 (Alaska 1974), there was no violation of the one-subject requirement. The single subject of the questioned act was state taxation. We then found that "[m]unicipal taxation and state taxation are often inextricably intertwined," and that "[i]n this case, since all of the provisions of the act relate directly to state taxation we find no violation of the one subject rule." 585 P.2d at 545–46. *See also Suber v. Alaska State Bond Comm.*, 414 P.2d 546 (Alaska 1966).

ther criminal acts by convicted offenders.[12] Similarly, a major consideration in setting the amount of bail pending trial is whether the person will pose a danger to other persons and the community.[13] If bail is set beyond what the person can afford, he or she remains in custody during the entire criminal proceeding. Furthermore, in our opinion, the "protection of the public" and "administration of justice" objectives which are to be served by these correctional facilities are sufficiently related to the purposes to be served by the public safety administration buildings to be constitutionally included in the same legislative enactment and bonding proposition. As noted above, under the *Gellert* test "[a]ll that is necessary is . . . that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." [14] We thus hold that ch. 139, SLA 1978 is not violative of the one-subject provision of art. II, § 13 of the Alaska Constitution.

We will briefly address two additional issues raised in this appeal. Appellant's due process claim "goes not to the type of notice but to the very object of that notice." [15] Thus limited, the constitutional due process violation alleged is essentially the same as appellant's argument that the public's right to vote on bond propositions, which is guaranteed in art. IX, § 8 of the Alaska Constitution, was nullified because the voters were presented with no reasonable choice between correctional facilities and public safety administration buildings, since both subjects were included in the same bill.

■ Admittedly, the one-subject rule would not assure voters sufficient notice of the objectives of a particular piece of legislation if diluted to require little or no connection between subjects joined therein; so construed, it could also conceivably deprive the voter of his or her liberty of choice, forcing acceptance of an objectionable proposition by coupling it with an unrelated meritorious objective which the voter earnestly wants to support. These dangers do not plague the bond proposition at issue in the instant case. Thus, we reject appellant's due process arguments.[16]

Affirmed.

---

12. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

13. AS 12.30.020(a).

14. *Gellert v. State*, 522 P.2d 1120, 1123 (Alaska 1974), *quoting Johnson v. Harrison*, 47 Minn. 575, 50 N.W. 923, 924 (1891). *Compare New Jersey Ass'n on Correction v. Lan*, 164 N.J.Super. 115, 395 A.2d 889 (1978).

15. Appellant concedes that the requirements of AS 15.15.030(11) regarding the proper form in which bond propositions are to be submitted to the voters were met, and that "[c]ertainly appropriate notice was given as pertains to ch. 139 as to just exactly what type of legislation it is. As stated in the title and body, it is a bonding proposition to fund construction of public buildings for two types of endeavors—corrections and public safety."

16. We also find appellant's equal protection argument without merit. Appellant apparently argues that if the legislature arrived at some sort of on-going plan which sufficiently related the two types of facilities to meet the one-subject requirement, the voters were not made aware of this connecting plan in the official materials which were distributed to them. Thus, appellant asserts that two classes of voters were created, those voters "privy to legislative determinations . . . which convey something markedly different from the statutory scheme" and those voters who had only the publicly available information. The "privy" voters had a different and better basis for their vote than all other voters, according to appellant. Since our analysis under the one-subject rule above does not rely on any secret legislative determinations that corrections and public safety are the same subject, but rather on general principles of law, we conclude that this equal protection claim has no merit.