70 P.3d 920 (2003)
149 Wash.2d 359
WASHINGTON ASSOCIATION OF NEIGHBORHOOD STORES; The Convenience Group LLC, d/b/a Quick Shop Minit Mart Neighborhood Stores; El Gaucho, L.L.C.; Waterfront, LLC, d/b/a Waterfront Seafood Grill; Runland Grocery; Mahoney Chevron, Inc.; The Spar, Inc., d/b/a Spar Café Bar; Harbor Wholesale Grocery, Inc.; and R.H. Smith Distributing Co., Inc., Appellants,
v.
STATE of Washington, Respondent,
Healthcare for Washington's Working Families, Respondent-Intervenor.
No. 72456-3.
Supreme Court of Washington, En Banc.
Argued October 15, 2002.
Decided May 8, 2003.
*921 Michael B. King, James L. Robart, Kathleen D. Benedict, Robin Dale, Olympia, Lane Powell Spears Lubersky, Seattle, for Appellants.
Maureen A. Hart, Assistant Attorney General, Jeffrey T. Even, Office of Attorney General, Olympia, Thomas F. Ahearne, Foster Pepper & Shefelman, Seattle, for Respondent.
*922 JOHNSON, J.
This case involves a challenge to the constitutionality of Initiative 773 (I-773; the initiative), commonly referenced to as the Tobacco Tax Initiative. Washington Association of Neighborhood Stores (appellants) claim the initiative is unconstitutional under article VIII, section 4; article II, section 19; and article II, section 37 of the Washington State Constitution.
In February 2002, appellants filed a declaratory judgment action challenging the constitutionality of I-773. This measure would impose an additional sales tax on cigarettes and a surtax on wholesaled tobacco products. The State of Washington and initiative sponsor Healthcare for Washington's Working Families (respondents) intervened in support of the initiative. On cross-motions for summary judgment, Thurston County Superior Court entered summary judgment in favor of respondents and dismissed appellants' complaint. We granted direct review of the trial court's decision and affirm.

Facts
I-773 was approved by Washington voters on November 6, 2001. The enactment of 773 imposed cigarette sales taxes and tobacco product taxes to fund low-income health care programs and other programs and to reduce consumption of tobacco through these new taxes. However, reduced consumption would also result in reduced preinitiative tobacco tax revenues dedicated to supporting existing programs. I-773 addresses this concern by earmarking a portion of the new tobacco tax revenues and transferring them to accounts dedicated to funding existing programs such as violence reduction, drug enforcement, water quality, and health care. As I-773 explains, this is done "to ensure the continued availability of previously dedicated revenues for certain existing programs." Laws of 2002, ch. 2, § 2(3). The remaining revenues are then designated to fund certain health care service programs for low-income recipients, including tobacco prevention and control programs, as well as the basic health plan. Laws of 2002, ch. 2, § 2(2)(a)-(c).
I-773 consists of four sections. Section 1 provides a statement of intent, section 3 imposes a cigarette tax and section 4 enacts a wholesale tobacco products tax.
Section 2 amends the health services account statute, RCW 43.72.900, providing how the additional tax revenues will be allocated.[1] Section 2 establishes priority in funding to three existing programs before any money will go to new programs: section 2(3)(a) guarantees funding for the violence reduction and drug enforcement account, section 2(3)(b) for the health services account, and section 2(3)(c) for the water quality account. Once these guaranties are met, the remaining funds will be routed to low-income health programs and Washington's basic health plan, per section 2(2). Section 2(2)(a) instructs the legislature to allocate funds to programs to improve the health of low-income people, while section 2(2)(b) allocates funds to the Washington state tobacco prevention and control plan to supplement existing funding. Section 2(2)(c) directs the remainder to be used to expand enrollment in Washington's basic health plan. The initiative does not include a severability clause.

Issues
The challenge to I-773 raises four issues. First, appellants claim the language of I-773 mandating the use of tobacco sales tax revenues for low-income health care calls for continued allocations of funds beyond a single biennium in violation of article VIII, section 4. Second, they contend I-773 contains multiple subjects in violation of the single subject rule of article II, section 19. Third, appellants claim I-773 violates the subject-intitle requirement of article II, section 19, *923 because it fails to provide proper notice of its contents. Finally, appellants claim I-773 violates the disclosure requirements of article II, section 37.

Article VIII, Section 4
Appellants first claim I-773 violates the single biennium bar of article VIII, section 4. Article VIII, section 4 imposes a bar on appropriations continuing beyond the next ensuing biennium. Article VIII, section 4 reads:
No money shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payments be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
(Emphasis added.) In short, under this provision money cannot be paid out of the treasury unless the legislature passes an appropriation bill. Under article VIII, section 4, payments under a bill cannot be made later than one month after the ensuing two-year biennium. The object behind this provision is to prevent the spending of public funds without authorization by the legislature. King County v. Taxpayers of King County, 133 Wash.2d 584, 604, 949 P.2d 1260 (1997). A statutory provision which instructs the legislature to spend money or make an appropriation serves this purpose. Long ago, we recognized the central object of section 4 was "`to secure to the legislative department of the government the exclusive power of deciding how, when, and for what purposes the public funds shah be applied in carrying on the government.'" State v. Clausen, 94 Wash. 166, 173, 162 P. 1 (1917) (quoting Humbert v. Dunn, 84 Cal. 57, 59, 24 P. Ill (1890)).
On numerous occasions we have made it clear that the disbursement of treasury funds must be preceded by a clear appropriation. In State v. Clausen, 160 Wash. 618, 630, 295 P. 751 (1931), we held the earmarking of funds within the treasury for a general purpose does not alone constitute an appropriation of those funds. Later, in Our Lady of Lourdes Hospital v. Franklin Co., 120 Wash.2d 439, 450, 842 P.2d 956 (1993), it was held that agencies may not continue to spend once their appropriation has been exhausted.
Article VIII, section 4 contains three requirements. First, it prohibits the payment of money out of the state treasury without an appropriation. The purpose of this requirement is to prevent the expenditure of public funds without legislative authorization by those who have charge of them. Taxpayers, 133 Wash.2d at 604, 949 P.2d 1260 (quoting State v. Clausen, 94 Wash, at 173, 162 P. 1).
Second, it requires payments pursuant to an appropriation to be made within one calendar month after the end of the biennium in which the appropriation is made.
Third, article VIII, section 4 requires every appropriation to specify the sum it appropriates for expenditure and the object to which the appropriation is to be applied.[2]
To determine whether I-773 commands an appropriation we turn first to the text of the initiative. If the text is clear then we need not go any further. Enactments are not subject to judicial interpretation where they can be well understood according to their natural and ordinary meaning. State v. Thome, 129 Wash.2d 736, 762-63, 921 P.2d 514 (1996). In all cases, an initiative should be read as an average informed voter would read it. See, e.g., Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2000).
Appellants base their challenge on sections 2(2)(b) and 2(2)(c) of I-773 which provide that the legislature shall appropriate certain funds from the tobacco prevention and control plan, and certain funds in the health service fund shall be appropriated by the legislature for the basic health plan enrollment. Relying on those two sentences, appellants *924 argue I-773 is unconstitutional because it mandates appropriation beyond a single biennium. We disagree with the appellants in their interpretation of the effect of the initiative's language. Directing a legislative appropriation, as in this case, is not the same as making an appropriation.
In State ex rel. Brainerd v. Grimes, 7 Wash. 191, 193, 34 P. 833 (1893), we dealt with the question of what constitutes an appropriation. In Brainerd, the legislature enacted a statute fixing the salaries of the state board of land commissioners. The statute directed the state treasurer to pay them out of any moneys in the treasury not otherwise appropriated. We held that this was an appropriation because the language used in the statute "is amply sufficient to show that the intention of the legislature was to appropriate[,] [it has] designated the amount, and [has] directed that it be paid out of any moneys in the state treasury not otherwise appropriated." Brainerd, 7 Wash, at 193, 34 P. 833. Therefore, merely earmarking funds is not enough to signify an appropriation; contrary to the dissent, there must also be express legislative authorization for the payments of funds from the state treasury. While I-773 specifies the purpose, of amount, and source of the proposed appropriations, it does not itself make the appropriation, nor does it contain the legislature's express authorization. Instead, it directs "the legislature shall appropriate" and the "[f]unds ... shall be appropriated." Laws of 2002, ch. 2, § 2(2)(a), (b). Both phrases show it is the legislature that must take the action to appropriate. Moreover, they show that the legislature has not in fact made the express authorization.
A close reading of sections 2(2)(b) and 2(2)(c) reveals that both require legislative action for any type of appropriation to take place. Section 2(2)(b) instructs the legislature to appropriate, but is not in and of itself an appropriation, while section 2(2)(c) discusses what happens after the appropriation has been made. Laws of 2002, ch. 2, § 2(2)(b), (c). As a result, I-773 is not forcing an appropriation as appellants would read it. The initiative does not mandate payments from the state treasury, and no money will be paid until the legislature takes action to appropriate funds. The action taken by the legislature in response to the passage of I-773 is an appropriation subject to the article VIII, section 4 two year restriction. Each biennium the legislature will have to make a new appropriation; therefore, the two year restriction is not violated and the current legislature cannot bind any future one.
The simple answer to this challenge is that I-773 is not an appropriation at all. A direction to the legislature (even the use of the word "shall") to make an appropriation is not itself an appropriation. Critically, the direction is not self-executing and it is up to the legislature to make an appropriation every biennium. The legislature retains the power to appropriate or not.

Article II, Section 19
We have dealt with challenges to article II, section 19 on many occasions and recognize its two components: the single subject requirement and the title requirement. Appellants challenge I-773 on the basis of both components.

I. The Single Subject Requirement
Appellants argue I-773 violates the single subject rule of article II, section 19. Section 19 reads in part, "No bill shall embrace more than one subject." The single subject requirement seeks to prevent grouping of incompatible measures as well as the pushing through of unpopular legislation by attaching it to popular or necessary legislation. Power, Inc. v. Huntley, 39 Wash.2d 191, 198, 235 P.2d 173 (1951); Amalgamated Transit Union, 142 Wash.2d at 207, 11 P.3d 762.
When challenging the single subject requirement, the first step is to determine whether the title of the enactment is general or restrictive. City of Burien v. Kiga, 144 Wash.2d 819, 825, 31 P.3d 659 (2001). "A general title is broad, comprehensive, and generic as opposed to a restrictive title that is specific and narrow." Kiga, 144 Wash.2d at 825, 31 P.3d 659. If an initiative's subject is determined to be restrictive, *925 its constitutionally permissive scope is more limited. "In assessing whether a title is general, it is not necessary that the title contain a general statement of the subject of an act; `[a] few well-chosen words, suggestive of the general subject stated, is all that is necessary.'" Amalgamated Transit Union, 142 Wash.2d at 209, 11 P.3d 762 (quoting State ex rel. Scofield v. Easterday, 182 Wash. 209, 212, 46 P.2d 1052 (1935)). The first sentence of the ballot title of I-773 reads, "[A]dditional tobacco taxes for low-income health programs and other programs." State of Washington Voters Pamphlet General Election 6 (Nov. 6, 2001). We find the title expresses a general subject, additional tobacco taxes for low-income health care and other programs, and is, therefore, general under article II, section 19.
General ballot titles are constitutional as long as, when read in entirety, the title broadly encompasses the topic of the enactment. Kiga, 144 Wash.2d at 825, 31 P.3d 659. I-773 is broad. Here, under a broad general reading, the additional tobacco taxes can be used only for low-income health programs and other programs already funded with existing tobacco taxes. This is the exact purpose of the new tax. The initiative imposes additional tobacco taxes (Laws of 2002, ch. 2, §§ 3, 4) for low-income health programs (id. § 2(2)) and other programs (id. § 2(3)). We conclude the initiative's provisions are within the general reading of the title and do not constitute two separate subjects.
Appellants further argue that the initiative has multiple provisions in its ballot title. However, we have made it clear that a ballot title mentioning more than one type of provision does not create a restrictive rather than general subject title. See, e.g., Amalgamated Transit Union, 142 Wash.2d 183, 11 P.3d 762. Instead of looking to whether the ballot title makes specific references to provisions contained in the text of the initiative, we look to whether the ballot title suggests a general, overarching subject matter for the initiative. See Amalgamated Transit Union, 142 Wash.2d at 209, 11 P.3d 762; Resp'ts' Resp. Br. at 23. Just as the ballot title in Amalgamated was held to be general in referring to tax limitation, I-773 also has a general title. Here, the general purpose of I-773 is to improve low-income health and health care without jeopardizing programs currently funded with tobacco taxes. It relates generally to improving low-income health and health services which, as explained below, are all within a single related subject. 773's subject title is, therefore, general and does not violate article II, section 19.
Additionally, we held even if the general subject contains several incidental subjects or subdivisions, all that is required is that there be some rational unity between the general subject and the subdivisions. State v. Grisby, 97 Wash.2d 493, 498, 647 P.2d 6 (1982). "An initiative can embrace several incidental subjects or subdivisions and not violate article II, section 19, so long as they are related. In order to survive, however, rational unity must exist among all matters included within the measure and the general topic expressed in the title." Kiga, 144 Wash.2d at 826, 31 P.3d 659. Rational unity requires included subjects to be reasonably connected to one another and the ballot title. Amalgamated Transit Union, 142 Wash.2d at 207, 11 P.3d 762.
Appellants argue there are multiple subjects contained within I-773 and that they are unrelated and not necessary for each other's implementation. Specifically, appellants contend there are three subjects in 773 that lack rational unity: increasing the tobacco tax, funding health care for low-income families, and maintaining current funds for other preexisting programs already relying on the tobacco tax. Appellants' Br. at 31. They rely on this court's holdings in Amalgamated Transit Union and Kiga for this position. In Amalgamated and Kiga, it was determined that an initiative had two subjects and "neither subject [was] necessary to implement the other." Amalgamated Transit Union, 142 Wash.2d at 217, 11 P.3d 762; Kiga, 144 Wash.2d at 828, 31 P.3d 659. However the appellants wrongly equate "rational unity" with "necessity," claiming in a measure only share rational unity if they are necessary to one another. Provisions necessary to one another understandably share rational unity, and it is not surprising that we *926 would comment on it. Nevertheless, neither observation relied on by the appellants indicates that the absence of such a relationship defeats rational unity. It is on this erroneous basis that the appellants contend there is a lack of rational unity between the provisions of I-773 mentioned above. We disagree.
We conclude rational unity exists between the sections of the initiative because the tobacco taxes directly relate to the programs they fund, and the programs relate to the title. As the ballot title explains, the subject of I-773 is imposing additional tobacco taxes for low-income health programs and other programs. Every provision of the initiative relates to those functions. The provisions raising taxes relate because they provide the revenue to support the new and existing programs. Each section of I-773 presents a single and rationally unified proposal for improving the health of our state's low-income citizens without imposing a net loss of tax revenue on other preexisting programs. The provisions are interrelated and germane to the general subject matter of I-773 and are, therefore, rationally unified and constitutional.

II. The Subject in Ballot Title Requirement
In addition to the single subject requirement, article II, section 19 requires the subject of an enactment be stated in the title to provide notice of its contents. Amalgamated Transit Union, 142 Wash.2d at 207, 11 P.3d 762. Article II, section 19 states, "No bill shall embrace more than one subject, and that shall be expressed in the title." (Emphasis added.) The subject in title rule is based on the second clause of section 19. Its purpose is to inform voters and members of the legislature on the subject matter of the measure they are voting on. Mun. of Metro. Seattle v. O'Brien, 86 Wash.2d 339, 348, 544 P.2d 729 (1976). In explaining the subject in the title requirement of article II, section 19 we have stated:
"The title to a bill need not be an index to its contents; nor is the title expected to give the details contained in the bill." Treffry v. Taylor, 67 Wash.2d 487, 491, 408 P.2d 269 (1965). "[The] title complies with the constitution if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." [Young Men's Christian Ass'n v. State, 62 Wash.2d 504, 506, 383 P.2d 497 (1963); Treffry, 67 Wash.2d at 491, 408 P.2d 269.
Wash. Fed'n of State Employees v. State, 127 Wash.2d 544, 555, 901 P.2d 1028 (1995). The ballot title of I-773 meets this test. Any "`objections to the title must be grave and the conflict between it and the constitution palpable before we will hold an act unconstitutional.'" Nat'l Ass'n of Creditors v. Brown, 147 Wash. 1, 3, 264 P. 1005 (1928) (quoting N. Cedar Co. v. French, 131 Wash. 394, 419, 230 P. 837 (1924)).
The official ballot title reads:
Initiative Measure No. 773 concerns additional tobacco taxes for low-income health programs and other programs. This measure would impose an additional sales tax on cigarettes and a surtax on wholesaled tobacco products. The proceeds would be earmarked for existing programs and expanded health care services for low-income persons.
Voters Pamphlet, supra, at 6. The title notifies the voter that I-773 includes additional tobacco taxes and goes on to explain the types of taxes that would go into effect if the measure is passed. The title further explains where the money from the new taxes will go, i.e., to existing programs and expanded health care services for low-income persons. If an individual wishes to learn more details or is not satisfied with the ballot title, he or she can simply read the attorney general's explanation about the program funded by the initiative in the Voters Pamphlet.
We conclude the ballot title gives the voting public proper notice of the purpose of the initiative. Therefore, no violation of the subject in ballot title requirements of article II, section 19 exists.

Article II, Section 37
Last, appellants argue I-773 is unconstitutional under article II, section 37. *927 Section 37[3] states:
No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.
Article II, section 37 requires legislation which revises or amends other acts to set them forth at full length; legislation which fails to do this will be held invalid. Amalgamated Transit Union, 142 Wash.2d at 245, 11 P.3d 762. The dual purpose of article II, section 37 is to disclose the effect of the new legislation and to show its impact on existing laws. Amalgamated, 142 Wash.2d at 245-46, 11 P.3d 762. The result of compliance with article II, section 37 should be that no other search will be required to determine which sections are amended. Flanders v. Morris, 88 Wash.2d 183, 189, 558 P.2d 769 (1977). Citizens or legislators must not be required to search out amended statutes to know the law on the subject treated in a new statute. Under article II, section 37, a new statute must explicitly show how it relates to statutes it amends. Thorne, 129 Wash.2d at 756, 921 P.2d 514.
By its own terms, I-773 does not amend any statutes other than that expressed in the initiative. The only statute amended is RCW 43.72.900, which is set forth at length in section 2 of the initiative. Appellants argue I-773 affects other statutes and that these statutes are not referenced in the initiative. The appellant misread article II, section 37. Article II, section 37 applies only to statutes which are revised or amended and not affected statutes. A person reading I-773 needs to look no further than the text to know that it authorizes new taxes and to know how the new taxes are going to be spent. In the end, I-773 properly shows how it relates to the only statute it affects.

Conclusion
We conclude I-773 meets the requirements of article VIII, section 4; article II, section 19; and article II, section 37 of our state constitution. The trial court's decision is affirmed.
MADSEN, IRELAND, and CHAMBERS, JJ., and SMITH, J.P.T., concur.
SANDERS, J., dissenting.
I posit I-773 as written violates article VIII, section 4 and article II, section 19 of the state constitution and is therefore invalid. Voters who voted for new tobacco taxes to fund low-income health care programs now find they get the tax but not the low-income health programs.

Article VIII, Section 4
I-773 violates article VIII, section 4 by mandating appropriations for low-income health programs and other programs that continue beyond the next ensuing biennium. Article VIII, section 4 prohibits this:
No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
Two sections of I-773 clearly violate this provision. Section 2(2)(b) states:
For each state fiscal year beginning on and after July 1, 2002, the legislature shall appropriate no less than twenty-six million two hundred forty thousand dollars from the tobacco prevention and control account for implementation of the Washington state tobacco prevention and control plan.
Laws of 2002, ch. 2, § 2(2)(b) (emphasis added); Clerk's Papers (CP) at 98. Section 2(2)(c) states:
*928 Because of its demonstrated effectiveness in improving the health of low-income persons... the remainder of the funds ... shall be appropriated solely for Washington basic health plan enrollment ... Funds appropriated pursuant to this subsection (2)(c) must supplement, and not supplant, the level of state funding needed to support enrollment of a minimum of one hundred twenty-five thousand persons for the fiscal year beginning July 1, 2002, and every fiscal year thereafter.
Laws of 2002, ch. 2, § 2(2)(c) (emphasis added); CP at 99. These sections quite obviously direct appropriation of funds and mandate appropriations continue beyond a single biennium.
The majority relies on State ex rel. Brainerd v. Grimes, 7 Wash. 191, 34 P. 833 (1893) to establish a bright line rule to define "what constitutes an appropriation" as opposed to "merely earmarking funds." Majority at 924. According to the majority Brainerd requires the statute to designate the amount of the funds to be appropriated and to direct the state treasurer to pay such sums out of the State's funds. Id. at 924. Because I-773 allegedly "directs" the legislature to appropriate the funds, rather than directing the state treasurer to pay them, the majority concludes the funds the State acquires through the tobacco tax have been earmarked, but not appropriated, for low-income health programs. Id.
But the majority overstates the holding of Brainerd, which does not announce a bright line rule for determining legislative intent to appropriate. There the court upheld a statute to establish and fund a state board of land commissioners against an article VIII, section 4 challenge because the title of the bill enacted by the legislature included the words "making appropriations." Brainerd, 7 Wash, at 193, 34 P. 833. However subsequent decisions by this court have not required words to this effect to be a part of the title. See, e.g., King County v. Taxpayers of King County, 133 Wash.2d 584, 949 P.2d 1260 (1997) (upholding RCW 82.14.0485, entitled "Sales and use tax for baseball stadium Counties with population of one million or moreDeduction from tax otherwise required `Baseball stadium' defined").
As an additional consideration Brainerd opined "the language employed in the body of the act is amply sufficient to show that the intention of the legislature was to appropriate" because it "designated the amount" and directed the state treasurer to pay the costs out of the state's general fund. 7 Wash, at 193, 34 P. 833. But Brainerd does not establish a rule that all appropriation statutes must contain language directing the state treasurer to pay. On the contrary, it holds such formal words as "is hereby appropriated," provide an even more patent indication of legislative intent. 7 Wash, at 193, 34 P. 833. This requirement is satisfied by the formal language of I-773 providing "the legislature shall appropriate" and funds "shall be appropriated." Laws of 2002, ch. 2, § 2(2)(b), (c).
Finally, the majority's reliance on Brainerd is misplaced because there the statute provided, "`the treasurer of state is hereby directed to pay,'" 7 Wash, at 193, 34 P. 833 (emphasis added) (quoting Laws of 1893, § 4, at 387), but the word "direct" is notably absent from the entire text of I-773. Instead the statute provides the legislature "shall appropriate" funds and funds "shall be appropriated." Laws of 2002, ch. 2, § 2(2). "It is well settled that the word `shall' in a statute is presumptively imperative and operates to create a duty." Erection Co. v. Dep't of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993). This is reinforced where "may" and "shall" are used together in the same statute as they are here. Scannell v. City of Seattle, 97 Wash.2d 701, 704-05, 648 P.2d 435, 656 P.2d 1083 (1982). For example, section 2(2)(b) provides in part:
[t]he funds transferred shall be used exclusively for implementation of the Washington state tobacco prevention and control plan and shall be used only to supplement, and not supplant, funds in the tobacco prevention and control account as of January 1, 2001, however, these funds may be used to replace funds appropriated by the legislature....
Laws of 2002, ch. 2, § 2(2)(b) (emphasis added); CP at 98. Thus, the provisions that the *929 legislature "shall appropriate" funds and that funds "shall be appropriated" mandate appropriations, they do not "direct" the legislature to appropriate funds.
The majority avoids this conclusion by a so-called "close reading" of section 2(2)(b) and (c). Under the majority's reading I-773 gives the Legislature the discretion to appropriate or not as it sees fit. Majority at 924. Thus, no continuing appropriations are established and article VIII, section 4 is not violated. Id.
Credulity is more than strained by this reading of the initiative's clear language. When construing initiatives we must follow the rules of statutory construction. McGowan v. State, 148 Wash.2d 278, 288, 60 P.3d 67 (2002). "[W]here the language of the enactment is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation." State v. Thorne, 129 Wash.2d 736, 762-63, 921 P.2d 514 (1996). A court should "not strain to interpret [a] statute as constitutional: a plain reading must make the interpretation reasonable." Soundgarden v. Eikenberry, 123 Wash.2d 750, 757, 871 P.2d 1050 (1994). Moreover, initiatives must be read as the average informed voter would read them. See Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2000). I submit the text of 773 is unambiguous, clear, and can be well understood based on the common meaning of the text. The average informed voter would read I-773 to mandate future appropriations for low-income health programs and other programs beyond a single biennium. When the initiative says "the legislature shall appropriate" the meaning is clear; when the initiative says "funds shall be appropriated" it is not difficult to understand. A "close reading" tells us it means what it says.
The mandatory nature of the future appropriations is also strengthened by other language in the initiative, language which an average informed voter reading I-773 would take as a promise that future funding is mandated by law. The ballot title of I-773 informs us:
Initiative Measure No. 773 concerns additional tobacco taxes for low-income health programs and other programs. This measure would impose an additional sales tax on cigarettes and a surtax on wholesaled tobacco products. The proceeds would be earmarked for existing programs and expanded health care services for low-income persons. Should this measure be enacted into law?
State of Washington Voters Pamphlet, General Election 3, 6 (Nov. 6, 2001); CP at 86, 89. The first section of I-773 removes any lingering doubt (as if any doubt lingered) that providing funding for low-income health care is the purpose of I-773: "It is the intent of the people to improve the health of low-income children and adults by expanding access to basic health care..." Voters Pamphlet, supra, at 15 (Initiative 773, § 1); CP at 98. Only by ignoring virtually the entire text, substance, and purpose of I-773 is the majority's reading possible.
Even were one to assert that the meaning of "shall" standing alone is ambiguous, ambiguity must be resolved by consideration of extrinsic evidence of voter intent such as that found in the Voters Pamphlet. See Thorne, 129 Wash.2d at 763, 921 P.2d 514; Lynch v. Dep't of Labor & Indus., 19 Wash.2d 802, 812-13, 145 P.2d 265 (1944); see also State ex rel. Evergreen Freedom Found, v. Wash. Educ. Ass'n, 140 Wash.2d 615, 637, 999 P.2d 602 (2000) (arguments for and against initiative provide evidence of voter intent). The Voters Pamphlet is consistent with reading "shall" as imperative and the appropriations as mandatory. The statement in support of the initiative promises:
People you know and trust are voting "yes" on I-773. Why?
Because they know I-773 will improve the health of low-income working adults and their children by expanding access to the Basic Health Plan and protect kids from tobacco by fully funding programs to prevent kids from smoking.
Voters Pamphlet, supra, at 6; CP at 89. Under the majority's reading this statement becomes a fraudulent misrepresentation. Even the majority recognizes that "the general purpose of I-773 is to improve low-income health and health care," majority at *930 925, yet the majority holds that the initiative must be read to provide no mandatory funding for low-income health care. Majority at 924.
The majority also holds the mandates in I-773 are not appropriations because they are not "self-executing." Majority at 924. However, if these appropriations are not self-executing, they are at least a legal mandate that appropriations be made. But such mandates violate the constitution. In any case, article VIII, section 4 does not require an appropriation to be self-executing. Although we have not defined "appropriation" for purposes of article VIII, section 4, we have provided a definition in a similar context, adopting the definition of "appropriate" from Black's Law Dictionary: to appropriate is "`[t]o prescribe a particular use for particular moneys; to designate or destine a fund or property for a distinct use....'" State ex rel. Gallwey v. Grimm, 146 Wash.2d 445, 477, 48 P.3d 274 (2002) (quoting Malyon v. Pierce County, 131 Wash.2d 779, 799, 935 P.2d 1272 (1997) (quoting Black's Law Dictionary 101 (6th ed.1990))).[1] The definition of "appropriation" in Black's Law Dictionary is "[i]n governmental accounting, an expenditure authorized for a specified amount, purpose, and time." Black's Law Dictionary, supra, at 101. The appropriations in I-773 are perfectly consistent with these definitions which require no more than earmarking the funds, and the definition of "appropriation" from Black's and "appropriate" from our prior decisions contain no suggestion that an appropriation must be self-executing. But our constitution does not permit a legal mandate for a future appropriation.
Article II, Section 19
If this initiative does not mandate appropriations for health care, as the majority says, then it must violate the subject-in-title requirement of article II, section 19 because its title does not properly describe its subject.
Recall the majority contends I-773 funding for low-income health care and other programs is contingent on approval by the legislature and no funding is necessarily allocated to any specific programs. Majority at 924. But the title emphatically states that the proceeds will be expended on low-income health care programs and other programs. Moreover, the title deceptively suggests that the tax revenues will be prioritized to pay for low-income health care programs, the only program actually named in the title. In fact, the unnamed "other programs" are given first priority and low-income health care is funded only afterward. See Laws of 2002, ch. 2, § 3; CP at 99. The title is doubly deceptive.
We have long held that, "The object of the constitutional requirement that the subject of an act shall be expressed in its title is that no person may be deceived as to what matters are being legislated upon." Thayer v. Snohomish Logging Co., 101 Wash. 458, 461, 172 P. 552 (1918) (citing Seymour v. City of Tacoma, 6 Wash. 138, 32 P. 1077 (1893)). Article II, section 19 is designed to prevent "`surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted....'" DeCano v. State, 7 Wash.2d 613, 626, 110 P.2d 627 (1941) (quoting 1 Thomas M. Cooley, A Treatise on the Constitutional Limitations ch. VI, at 296 (8th ed.1927)). By upholding I-773 against the future appropriation challenge the majority makes the initiative unconstitutional under article II, section 19.
There is absolutely no support for the reading the majority imposes to save I-773 from constitutional infirmity. The majority saves the tax but defeats the equally important purpose for this tax which was essential to popular adoption of the initiative. And even were this appropriate, the invention renders the title unconstitutionally deceptive.
I dissent.
ALEXANDER, C.J., OWENS and BRIDGE, JJ., concur.
NOTES
[1] The relevant subsections of section 2 read: "For each state fiscal year beginning on and after July 1, 2002, the legislature shall appropriate not less than twenty-six million two hundred forty thousand dollars from the tobacco prevention and control account for implementation of the Washington state tobacco prevention and control plan." Section 2(2)(b). "Funds appropriated pursuant to this subsection (2)(c) must supplement, and not supplant, the level of state funding needed to support enrollment of a minimum of one hundred twenty-five thousand persons for the fiscal year beginning July 1, 2002, and every fiscal year thereafter." Section 2(2)(c).
[2] The first and third requirements of article VIII, section 4 are not implicated in this case.
[3] Respondents' motion to strike or disregard appellants argument concerning article II, section 37 is denied. Appellants reliance on State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995), is proper as there was not a complete failure to raise the issue and no real prejudice or inconvenience is present.
[1] The court adopted this definition for purposes of state constitution article I, section 11, which provides, "No public money or property shall be appropriated for or applied to any religious worship, exercise or institution, or the support of any religious establishment...."